WHITE EAGLE OIL, & REFINING CO., Plaintiff, v. GUN-
DERSON, Governor, et al, Defendants.

STATE OF SOUTH DAKOTA ex rel MUTUAL TANK LINE
CO. et al, Plaintiffs, v. GUNDERSON, Governor, et al,
Defendants.

(205 N. W. 614.)

(File Nos. 6030, 6042.   Opinion filed October 28, 1925.)

1.   States—Officers—Parties—Actions —"Suits   Against   the   State"
and "Suits Against State Officers" Distinguished.

Cases in which decrees require performance of obligation of
state in its political capacity by affirmative official action of de-
fendants are suits against the state, while actions at law or
suits in equity against persons violating and invading plaintiffs'
personal and property rights under color or authority uncon-
stitutional and void while claiming to act as officers of state
are suits against state officers.

2.   States—Parties—Officer Sued as Individual and Not as Officer,
and Court Not Ousted of Jurisdiction Because He Asserts
Authority as Officer.

In suits against one violating and invading plaintiffs' per-
sonal and property rights under color or authority unconstitu-
tional and void, defendant is sued as individual, not as officer
of government, and court is not ousted of jurisdiction because
defendant asserts authority as officer of state, but to make out
defense he must show authority sufficient in law to protect him.

3.   States — Injunctions — Gasoline — Courts Cannot Interfere with
State's Statutory Right to Sell Gasoline, but May Prevent Any
One in Custody Thereof from Selling It Without Legal Au-
thority.

Courts cannot interfere with property interest of state in
gasoline proposed to be sold by it, under Laws 1925, c. 184, nor
with any incident of property, such as right to sell it, but any
one in custody thereof may be prevented from selling it with-
out legal authority.

4.   Courts—Appeal and Error—Supreme Court's Original Jurisdiction
Should Not Be Exercised to Protect Private or Local Rights.

Supreme Court's constitutional jurisdiction is primarily ap-
pellate, and its original jurisdiction should be assumed only
when interests of state at large are directly involved in preserv-
ing its sovereign prerogatives or franchises, preventing its of-
fices from usurpation, intrusion, or invasion, or protecting its

citizens' liberty, but not to protect private or local rights, except when application cannot properly be made to subordinate court.

5. **Courts—Prohibition—Constitutional Law—Supreme Court Will Assume Jurisdiction of Original Action to Test Constitutionality of Act Relating to Sale of Gasoline by State.**

As original action to test constitutionality of Laws 1925, c. 184, presents policy of state in dealing in gasoline as commodity, which affects not only parties, but many others similarly situated and widely distributed over state, issues involved must eventually be decided by Supreme Court, and interests of state at large are directly involved in alleged diversion and misapplication of public funds, Supreme Court will assume jurisdiction thereof.

6. **States—Parties—Injunction—Taxpayer or Elector Need Not Have Special Interest in Suit nor Suffer Special Injury to Bring Action to Restrain Public Officers from Acting Under Alleged Unconstitutional Law.**

Taxpayer or elector need not have special interest in suit nor suffer special injury to himself to enable him to protect public rights by action to test constitutionality of Laws 1925, c. 184, relating to sale of gasoline by state, and restrain public officers from acting thereunder.

7. **Courts—Attorney General—Supreme Court Will Hear Original Suit to Restrain State Officers from Acting Under Unconstitutional Law on Relation of Taxpayers or Electors, Where Attorney General Is Defendant and Refuses to Prosecute.**

Generally, Supreme Court will not exercise original jurisdiction in suit to restrain public officers from acting under unconstitutional law, unless prosecuted in name of state on relation or information of Attorney General, but where latter is party defendant and refuses to prosecute action, suit will be heard on relation of taxpayers or electors.

8. **Taxation—Gasoline—Unconstitutional Law—State Cannot Levy and Collect Taxes to Conduct Business of Selling Gasoline.**

Under Const., art. 11, sec. 2. state may not levy and collect taxes to conduct business of selling gasoline under Laws 1925, c. 184, as gasoline is not a natural resource of state, and business of buying and selling it is not within Const., art. 13, sec. 1, authorizing state to own and conduct proper business enterprises to develop resources and improve economic facilities of state, though gasoline may be used in development of state's resources.

9. Highways—Appropriations—Act, Authorizing Investment of Funds
   Appropriated by Prior Act for Highway Purposes in Gasoline,
   etc., for Sale by State, Held Unconstitutional.

   Laws 1925, c. 184, authorizing state to invest motor fuel tax
   funds, levied and appropriated for highway purposes, under
   Laws 1923, c. 225, as amended by Laws 1925, cc. 228, 229,
   in gasoline, oils, etc., for sale at retail, violates Const., art. 11,
   sec. 8, prohibiting use of taxes raised and appropriated for
   special purpose, whether object be exercise of police power to
   control and regulate dealing in gasoline or a private purpose.

Original action by the White Eagle Oil & Refining Company,
and by the State of South Dakota, on the relation of the Mutual
Tank Line Company and others, against Carl Gunderson, as Gov-
ernor of the State of South Dakota, and others. Demurrer to
complaints overruled, and temporary injunction allowed.

In case No. 6030:

*Oppenheimer, Dickson, Hodgson, Brown & Donnelly,* of St.
Paul, Minn., and *Sutherland, Payne & Linstad,* of Pierre, for
Plaintiff.

*Buell F. Jones,* Attorney General, and *E. D. Roberts* and *R.
F. Drewry,* Assistants Attorney General, for Defendants.

In case No. 6042:

*McNulty, Wiliamson & Smith,* of Aberdeen, for Plaintiffs.

*Buell F. Jones,* Attorney General, and *E. D. Roberts* and *R.
F. Drewry,* Assistants Attorney General, for Defendants.

(1) To point one of the opinion, Plaintiff cited: Mullen v.
Dwight et al, 42 S. D. 171, 173 N. W. 645; Reagon v. Farmers
Loan and Trust Co., 154 U. S. 362, 38 L. ed. 1014; Louisiana v.
Jumel, 107 U. S. 711; Antoni v. Greenhow, 107 U. S. 769; Cun-
ningham v. Macon & B. R. Co., 109 U. S. —; Hagood v. South-
ern, 117 U. S. 52; Osborn v. Bank of United States, 22 U. S. (9
Wheat.) 738; Davis v. Gray, 83 U. S. (16 Wall.) 203; Elmer v.
Wallace, 275 Fed. 86.

Defendant cited: Tankford v. Okla. Engraving Co., 130 Pac.
278; State v. Cockerell, 112 Pac. 1000; Lovett v. Tankford, 145
Pac. 757; Tankford v. Platte Iron Works, 235 U. S. 460; Wertz
v. Nestos (N. D.), 200 N. W. 524.

(6) To point six, Plaintiff cited: Chamton v. Zabraiskie,
11 Otto 601, 25 L. ed. 1070; Owensboro Water Works Company

v. City of Owensboro (Ky.), 96 S. W. 867; Merchants' Police, etc., Telegraph Co. v. Citizens' Telephone Company, 93 S. W. 642, 20 Ky. Law Rep. 512; Bayley v. City of New Orleans, 23 Fed. 843; Santa Clare County v. Southern Pac. R. Co., 118 U. S. 394, 6 Sup. Ct. 132, 30 L. ed. 118; Pembina Consolidated Silver Mining & Milling Co. v. Pennsylvania, 125 U. S. 181, 8 Sup. Ct. 737, 31 L. ed. 630; Davenport v. Buffngton, 97 Fed. 234; State v. Lien, 9 S. D. 297, 68 N. W. 748; State v. Menzie, 17 S. D. 535, 97 N. W. 745.

(8)  To point eight, Plaintiff cited:  In re Opinion of the Judges, 43 S. D. 648, 180 N. W. 957; Green v. Frazer, 64 L. ed. 878; Cooley on Taxation, Sec. 1818; Morton, Bliss & Co. v. Comptroller General, 4 S. C. 430, Id. 458; Lawrence National Bank v. Barber, 24 Kan. 534; Smith v. Haney, 73 Kan. 506, 85 Pac. 550; Chambe v. Durfee, 100 Mich. 112, 38 N. W. 661; Board of Education v. Board of Trustees, 113 Ky. 234, 68 S. W. 10; Lambert v. Board of Trustees (Ky.), 152 S. W. 802; People v. Lippincott, 65 Ill. 548; Sleight v. People, 74 Ill. 47; Hughes v. Board, 25 S. D. 480, 127 N. W. 613; Limitation of Taxation, 3 S. D. 456, 54 N. W. 417; City of Centerville v. Turner, 25 S. D. 300, 126 N. W. 605.

Defendant cited:  In re Opinion of the Judges, 43 S. D. 684, 180 N. W. 957; Mackey v. Reeves, 42 S. D. 340, 175 N. W. 359.

(9)  To point nine, Plaintiff cited:  Wheeler v. S. D. Land Settlement Board, 43 S. D. 551, 181 N. W. 359; Peterson Oil Co. v. Frary, 46 S. D. 258, 192 N. W. 842; In re Opinion of Judges, 182 Mass. 605, 66 N. E. 25, 60 L. R. A. 592; Lowell v. Boston, 111 Mass. 454; Dodge v. Township of Mission, 107 Fed. 827; In re Opinion of the Judges, 58 Maine 590.

Defendant cited:  Paulus v. State (N. D.), 201 N. W. 867; In re McKenna's Estate, 25 S. D. 369, 126 N. W. 611, 33 L. R. A. (N. S.) 616; State v. Kirby, 34 S. D. 281, 148 N. W. 533.

PER CURIAM.  These are original actions brought to test the validity and constitutionality of chapter 184, S. L. 1925, relating to the sale of gasoline by the state of South Dakota.  They are before us upon demurrer to the complaints.  As the same questions are involved in both cases with only slight differences in the facts stated, we consider the cases together.  The complaint

in the case, White Eagle Oil & Refining Company v. Gunderson et al, alleges the corporate capacity of the plaintiff; that it is a non-resident of the state but a taxpayer within the state paying general taxes, and the tax levied upon users of gasoline as provided by chapter 225, S. L. 1923, and amendments thereto; that the defendants are officers of the state of South Dakota holding the respective offices as follows: Carl Gunderson, Governor; James L. Driscoll, Treasurer; E. A. Jones, Auditor; Buell F. Jones, Attorney General; and Carl Gunderson, Joe W, Parmley, John E. Peart, and Chauncey T. Bates, member of the state highway commission; that on or about the 18th of July, 1925, the defendants Carl Gunderson, as Governor, and James L. Driscoll, as Treasurer, met, and at such meeting (called by telephone on one day's notice and unattended by the Attorney General of the state) decided that the retail prices exacted by dealers in gasoline in the state of South Dakota were unreasonable and excessive, and directed the state highway commission to buy gasoline and to sell the same at retail throughout the state, and further decided at said meeting to establish by, and through, the state highway commission, stations for the sale of gasoline at retail in the county seat of each county in the state, and elsewhere within the state; that the said members of the highway commission, purporting to act under said order and direction, are planning and threatening to enter extensively in the retailing of gasoline throughout the state and have placed orders for large quantities of gasoline to be bought for that purpose, and are about to purchase a large amount of equipment and material for the purpose of erecting and maintaining storage and service stations for the sale of gasoline at more than 25 stations; that said defendants are planning to pay for the gasoline so ordered, and for the material and equipment from the public funds of the state, to wit, from the state highway funds which have been or are to be paid into the treasury from the motor fuel license tax imposed by chapter 225, S. L. 1923, and amendments thereto; that said defendants are planning and threatening to use such funds to the sum of $50,000 for the purpose of purchasing material and equipment; that such material and equipment is being bought for no other use or purpose or service to the state; that such officers are planning and threatening to use at least $40,000 or $50,000 additional in the business of selling gaso-

line, and maintaining of stations and in paying the costs and expenses of their operation; that the members of the state highway commission are threatening to approve claims for the paying out of said funds, and the defendant E. A. Jones, auditor, is threatening to approve and allow such vouchers and to issue warrants upon the treasurer therefor, unless restrained by this court; that plaintiff has been for many years engaged in the business of producing, refining, selling, and distributing gasoline, and is now so engaged in this state; that plaintiff has approximately 65 service and tank stations in the state and owns and operates valuable properties, equipment, and facilities for the sale of gasoline to the general public at retail; that plaintiff has invested in such properties over $300,000; that many of said stations are located in the same communities and will be in direct competition with those about to be established by the defendants; that the yearly sale of gasoline by plaintiff approximates 9,000,000 gallons; that plaintiff has established and now owns in the state a successful growing business to which is attached a valuable good will and the patronage of a large number of customers; that plaintiff is a substantial taxpayer of the state, its properties are assessed within the state, and it pays the general property tax thereon; that plaintiff owns numerous motor vehicles and pays to the state of South Dakota the three cent gallon tax on each gallon so used and thereby becomes a contributor to the motor fuel license tax fund; that plaintiff has since October 1, 1921, paid $261,176.77 as a motor fuel license tax and is continuing monthly to make further payments of such tax; that said tax is paid to the state auditor, which the auditor is required to pay over to the treasurer, except such as may be refunded under the provision of said chapter 225 and amendments; that such defendants have sold, are now selling, and will sell at retail gasoline for a charge or price no more than the cost thereof to the state plus the cost of handling and contingencies without anything by way of profit; that in such retailing of gasoline defendants will use money raised by the motor fuel license tax, including that contributed by plaintiff, and will conduct said business on premises and in buildings and with the use of property belonging to the state which were purchased and acquired in part for other purposes and paid for with money collected from taxpayers for other purposes; that such business will

be conducted and managed in part by officers and employees of the state whose salary and wages are paid out of funds raised by general taxation; that the inevitable effect of the engaging of the state in the selling of gasoline, as it has engaged in, is now engaging and will engage in, will be to exclude from said state this plaintiff and all other persons, firms, and corporations for the reason that private business and enterprises engaged in selling gasoline cannot survive in competition with the state on the basis it has sold, now is selling, and purposes to sell, and for the further reason that the properties, facilities, and money employed and used by the state is, and will be, exempt from all taxation and the properties, facilities, and money employed by the plaintiff and other persons is and will be subject to taxation; that said business carried on by defendants has been, is being, and will be conducted and managed in part by officers and employees whose salaries and wages will be paid out of moneys raised by general taxation including property of plaintiff, whereby said business in a large measure relieved of that cost and expense commonly known as "overhead cost" will be less to the defendants than to the plaintiff and others engaged therein; that the prices at which plaintiff has sold and is selling gasoline in the state are not, and have not, been exorbitant, nor have they been excessive over an amount equal to the cost of said products plus the cost of handling, overhead and a fair profit on the capital invested; that the engaging in and carrying on of the business of selling gasoline by the defendants is illegal and without authority of law; that the engaging in and carrying on of the business of selling gasoline, as now engaged in or proposed to be engaged in by the defendants, is confiscatory of the property and business of this plaintiff in the state of South Dakota, and a taking of its said property and business without compensation and without due process of law, in violation of the Constitution of the United States and in violation of the Constitution of the state of South Dakota; that plaintiff has no adequate remedy at law; that defendants threaten to, and will hereafter, unless restrained therefrom, continue the operation of said unlawful business as the result of which further, greater and irreparable damage to plaintiff will occur; that plaintiff and other private corporations and persons engaged in the lawful business of selling and distributing gasoline products in the state of South

Dakota are sustaining and will, if defendants' acts aforesaid are not restrained, continue to suffer great and irreparable financial loss and damage by reason thereof; this suit is brought on behalf of all others similarly interested who may join herein. The complaint sets out in full chapter 184, S. L. 1925, and numerous constitutional provisions which it is claimed said act violates.

The complaint of the plaintiffs in case, State ex rel Mutual Tank Line Co.. et al v. Gunderson et al, is similar in purport and effect to the foregoing except in the following particulars: These plaintiffs allege that they are resident taxpayers, while in the former case the plaintiff is a nonresident; that they stated to the Attorney General of this state the facts set forth in their complaint and requested such officer to commence and prosecute this action, and that the Attorney General refused to do so; that no notice of the meeting of the Governor, Treasurer, and Attorney General was given to plaintiffs or any other persons interested in the result; that the highways of the state are subject to heavy and constant traffic, and the funds are appropriated and needed for the construction, reconstruction, repair, and maintenance of such highways, and unless highways already constructed are maintained and repaired they will be destroyed and the public will suffer a total loss of the funds invested therein, and if further highways are not built and graveled that public interest will be hampered and the defendants by their illegal conduct are diverting funds provided and appropriated for such construction, reconstruction, maintenance, and repair; that the issues tendered by this action involve grave public questions which must eventually be passed upon by this court, and irreparable damage would result should their decision be delayed during the period necessary for trial in an inferior tribunal and appeal therefrom; that the acts of the defendants, in engaging in the business of selling gasoline at retail within the state of South Dakota at approximately cost, has caused numerous retailers of gasoline within the state of South Dakota to discontinue the gasoline business, and that the continued acts of the defendants in engaging in the retail sale of gasoline will force these relators and others similarly situated to meet their price or go out of business, and will deprive the relators and others similarly situated of the right to make a fair profit upon their property and labor, and will deprive relators and others

similarly situated of their property without · compensation, and without any opportunity to be heard, and without any due process of law.

The defendants demurred to both complaints on the following grounds:

That it appears upon the face of the affidavit and application for temporary injunction that this court has no, jurisdiction of the defendants or the subject of the application or action, for the reason that said proceeding and action is against the state of South Dakota, which has not consented to be sued; that it appears upon the face of plaintiffs' application that if plaintiffs are· injured as alleged, that such injury is only personal and private, and is not such as to call into exercise the original jurisdiction of this court; that it appears upon the face of plaintiffs' said affidavit and application that sufficient facts are not therein stated to constitute a cause of action or to entitle plaintiffs to the relief demanded.

Considering the questions raised in the order presented by the demurrer, we have first, Is this a suit against the state?

In the case of Mullen v. Dwight et al, Regents of Education, 42 S. D. 171, 173 N. W. 645, we said:

"Many actions and judicial proceedings may be instituted, in any · courts having jurisdiction, against state officers and state agencies which are not deemed actions or suits against the state. An action against state officers to compel them by mandamus, or other similar process, to perform official duties of a purely ministerial nature, involving the exercise of no discretion of political or governmental power, is not a suit against the state, and may be maintained without its consent. ·Likewise, state officials may be· restrained or prohibited by appropriate action or procedure, in any court having jurisdiction, from performing unlawful acts as such officials, without the consent of the state, as such procedure is not deemed a suit against the state. 36 Cyc. 916, 917; Greenwood Cemetery Co. v. Routt, 17 Colo. 156, 28 P. 1126, 15 L. R. A. 369, 31 Am. St. Rep. 284; Rolston v. Missouri Fund Com., 120 U. S. 390, 7 S. Ct. 599, 30 L. ed. 721; German Ins. Co. v. Van Cleve ['Cleave], 191 Ill. 410, 61 N. E. 94; Gunter v. Ry. Co., 200 U. S. 273, 26 S Ct. 252, 50 L. ed. 477." Ex p.arte Young, 209 U. S. 123, 28 S Ct. 441, 52 L .ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764.

[1-3]  The distinction between suits against the state and suits against state officers may be expressed as follows: Those cases in which the decrees require by affirmative official action on the part of the defendants, the performance of an obligation which belongs to the state in its political capacity, are suits against the state; while those actions at law or suits in equity maintained against defendants who, while claiming to act as officers of the state, violate and invade the personal and property rights of the plaintiffs under color or authority unconstitutional or void, are not suits against the state.  In these latter cases, the defendant is sued, not as or because he is an officer of the government, but as an individual, and the court is not ousted of jurisdiction because the defendant asserts authority as an officer of the state.  To make out his defense, he must show that his authority was sufficient in law to protect him.  The gasoline proposed to be sold under the statute in question is the property of the state, and as an incident of such property subject to sale by the state when the Legislature so provides.  The courts cannot interfere with the property interest of the state therein nor with any of the incidents of property, but we thing it clear that any one in custody of the state's property who attempts to sell it without authority of law can be prevented from doing so.  The court, in preventing an officer or individual from selling the state's property without authority, is not preventing the state from doing so.

Second:  Is this action one that this court will entertain in the exercise of its original jurisdiction and have the parties an interest in the suit which entitles them to be heard?

[4-5]  The jurisdiction of the Supreme Court by the Constitution is primarily appellate.  The original jurisdiction of this court should be assumed when the interests of the state at large are directly involved in the preservation of its sovereign prerogatives, or its franchises, in the prevention of its offices from usurpation, intrusion, or invasion, or for the protection of the liberty of its citizens, but not to protect private or local rights, except in special cases, when for some perculiar cause application cannot properly be made to a subordinate court.  Everitt v. Board of County Commissioners, 1 S. D. 365, 47 N. W. 296; State ex rel Dakota Central Telephone Company v. City of Huron, 23 S. D. 153, 120 N. W. 1008; Oss v. State Depositors' Guaranty Fund

Commission, 48 S. D. 258, 204 N. W. 21.   The case at bar presents the policy of our state in dealing in gasoline as a commodity, which affects many citizens of the state, not only the parties to this action but many others similarly situated, and widely distributed over the state.   It is also apparent that the issues here involved must eventually be decided by the Supreme Court, which we think is a consideration that may properly influence us in determining to assume jurisdiction in an original action.   State v. Smith, 184 Wis. 455, 200 N. W. 65.

[6, 7]   The complaint alleges that the public funds of the state are being diverted and misapplied, making it appear that the interests of the state at large are directly involved.   Upon the question of the interest of plaintiffs entitling them to bring this action, we cite Weatherer v. Herron, 25 S. D. 208, 126 N. W. 244, where it is held any taxpayer or elector may in proper case sue to restrain public officers from an illegal act.   Nor is it necessary that the taxpayer or elector have a special interest in the suit or suffer special injury to himself to enable him to protect public rights.   State v. Lien, 9 S. D. 297, 68 N. W. 748; State v. Menzie, 17 S. D. 535, 97 N W. 745.   But generally this court will not exercise its original jurisdiction in such cases, unless the action is prosecuted in the name of the state upon the relation or information of the Attorney General.   However, since the Attorney General is a party defendant and refuses to prosecute the action, we think we should hear the suits on the relation of plaintiffs.

[8]   Third: Does the complaint state a cause of action? Plaintiffs contend that chapter 184, S. L. 1925, is unconstitutional. The constitutionality of the law under which the officers are acting is the important question.   The legislative act is as follows:

"Section 1.   The state highway commission of this state is hereby granted authority, when so directed by the Governor, the Attorney General and the State Treasurer, or a majority of them, to buy gasoline, oils, and lubricants, and sell the same at retail in this state.   Provided that the authority herein granted shall not be exercised except when the retail prices exacted by other dealers are found by the Governor, the Attorney General and the State Treasurer, or a majority of them, to be unreasonable and excessive.   For such purposes, all tanks or other storage facilities now or hereafter owned, leased or used by the state of South

Dakota, and said highway commission, not exclusively for highway or other particular purposes, may be used in carrying on such business.

"Section 2. There is hereby granted to the state highway commission the right to use such state highway funds, which have, or shall be paid into the state from the motor fuel license tax, under the provisions of chapter 225 of the Session Laws of 1923, and amendments thereto, for the purpose specified in section 1 hereof, provided however, that such funds so used shall not exceed the sum of one hundred thousand dollars ($100,000.00) at any time.

"Section 3. All sales of gasoline, oils and incidental commodities made under the authority herein granted, shall be made for cash only, and at no time shall such sales be made at a loss to the state.

"Section 4. The state highway commission shall keep an accurate account of all receipts and disbursements made in the purchase and sale of gasoline, oils and lubricants, the total amount purchased and sold at each established selling agency, together with all expenses incident to such business, which shall be included in the annual report of said commission." Section 5. Emergency clause.

Plaintiffs contend that this act violates that portion of section 2, art. 11, or our Constitution providing that:

"Taxes * * * shall be levied and collected for public purposes only."

Our country has developed under the individualistic theory of government, not socialistic. The United States and state Constitutions and laws have been framed under a policy having primary regard for individual rights. As was said by the Kansas court in the case of State v. Kelly, 71 Kan. 811, 81 P. 450, 70 L. R. A. 450, 6 Ann. Cas. 298:

"It has been the policy of our government to exalt the individual rather than the state, and this has contributed more largely to our rapid national development than any other single cause. Our Constitution was framed, and our laws enacted, with the idea of protecting, encouraging and developing individual enterprise and if we now intend to reverse this policy, and to enter the state as a competitor against the individual in all lines of trade and

commerce, we must amend our Constitution and adopt an entirely different system of government." ·

And by the Massachusetts court in Re Opinion of Judges, 182 Mass. 605, 66 N. E. 25, 60 L. R. A. 592:

"Until within a few years it generally has been conceded, not only that it would not be a public use of money for the government to expend it in the establishment of stores and shops for the purpose of carrying on a business of manufacturing or selling goods in competition with individuals, but also that it would be a perversion of the function of government for the state to enter as a competitor into the field of industrial enterprise, with a view either to the profit that could be made through the income to be derived from the business, or to the indirect gain that might result to purchasers if prices were reduced by governmental competition. There may be some now who believe it would be well if business was conducted by the people collectively, living as a community, and represented by the government in the management of ordinary industrial affairs. But nobody contends that such a system is possible under our Constitution."

It is generally conceded that the supplying of water for municipalities is a public purpose for which taxes may be levied; the same may be said of furnishing gas or electricity. The usual reason being that such commodities as water, gas, and electricity cannot be furnished by private persons or corporations without the exercise of eminent domain. The right of the state to engage in the sale of intoxicating liquors was upheld in the case of State ex rel v. Aiken, 42 S. C. 222, 20 S. E. 221, 26 L. R. A. 345, the right being predicated upon the police power of the state to control and regulate the liquor traffic. The court says:

"The police power is a public purpose,   *   *   *   a tax levied for its enforcement would be as lawful as a tax to raise funds to build a state house."

In the case of Laughlin v. Portland, 111 Me. 486, 90 A. 318, 51 L. R. A. (N. S.) 1143, Ann. Cas. 1916C, 734, the act empowering a city or town to maintain a permanent wood, coal, and fuel yard for the purpose of selling at cost such commodities was sustained. On the other hand, it has been held that the business of oil refining (State v. Kelly, 71 Kan. 811, 81 P. 450, 70 L. R. A. 450, 6 Ann. Cas. 298), the manufacture and sale of ice (State ex

rel v. Orear, 277 Mo. 303, 210 S. W. 392; Union Ice & Coal Co. v. Ruston, 135 La. 898, 66 So. 262, L. R. A. 1915B, 859), the selling of coal at retail (Baker v. Grand Rapids, 142 Mich. 687, 160 N. W. 208; Opinion of Justices, 155 Mass. 598, 30 N. E. 1142, 15 L. R. A. 809; Opinion of Justices, 182 Mass. 605, 66 N. E. 25, 60 L. R. A. 592), establishing and operating a state elevator (Rippe v. Becker, 56 Minn. 100, 57 N. W. 331, 22 L. R. A. 857), loans to working people for the purpose of securing homes (Opinion of Judges, 211 Mass. 624, 98 N. E. 611, 42 L. R. A. [N. S.] 221), owning and operating movie theaters (State ex rel 720, Ann. Cas. 1914D, 949), and other similar lines of business cannot be entered into by the government and supported by public taxation. There is nothing essentially different in the business of retailing gasoline from that of any other commodity, and while it may be conceded that gasoline under present economic conditions is a necessity, there is no reason why it may not be retailed by private enterprise. There is no need of the exercise of the right of eminent domain; it is not contraband as is intoxicating liquor, and no governmental restrictions are placed upon trade in gasoline, as such. Private persons have as much right to engage in the sale of this commodity as in the sale of any other useful or necessary article. We are satisfied the state may not enter into the business of selling gasoline and levy and collect taxes to conduct such business, unless, as suggested by the defendants, article 13 of our Constitution, and especially section 1 of said article, empowers the state to enter into such business.

Recent amendments to our Constitution evidence a tendency to depart from the earlier fundamentals of our government, and experiment in socialism and paternalism. The state has been authorized to enter into business enterprises, such as the manufacture and sale of cement; the drainage of agricultural lands; the irrigation of agricultural lands; state hail insurance; the manufacture, distribution, and sale of electric current; mining, distribution and sale of coal; the establshing and maintaining of a system of credits to assist in the building of homes; rural credits; and works of internal improvement. In Mackey v. Reeves, 42 S. D. 347, 175 N. W. 359, we said:

"These amendments evidence a fundamental change in the policy of the government, primarily designed to effect an early

development of the resources and economic facilities of the state. But they do not evidence an intent to abrogate or modify article 11, § 2, of the Constitution, which declares that: 'Taxes * * * shall be levied and collected for public purposes only.' This provision clearly inhibits the collection, and necessarily the expenditure, of public moneys for private benefit as distinguished from public purposes. * * * An appropriation of public money to be constitutional must be for some use or object which, directly or indirectly, in some degree or manner will materially aid in the proper functioning of some governmental agency, and in so doing will serve a public purpose."

There is nothing in any of these amendment to the Constitution which can be construed to apply to the sale of gasoline by the state, unless it be that portion of section 1 of article 13 which says that the state, "for the purpose of developing the resources and improving the economic facilities of South Dakota, * * * may own and conduct proper business enterprises." It is a well-known fact that petroleum and its products including gasoline are not natural resources of South Dakota; that gasoline may be used in the development of the resources of the state is not sufficient to place the business of buying and selling gasoline within the meaning of this provision. If we were to so hold it would lead to a practical removal of all restrictions upon the state to engage in business, since there is nothing which its not useful and used in activities developing the resources of the state.

[9]    But it is contended by respondents that the act in question is an exercise of the police power; that the purpose of the act is to control and regulate dealing in gasoline by preventing the charging of extortionate prices therefor, and therefore does not violate the provision of the Constitution requiring taxes to be levied for public purposes, only, since the police power is a public purpose. If this act be an exercise of the police power, it may be conceded that the purpose is public, but as we are confronted with another section of the Constitution which we think is decisive of these cases, we will not determine whether or not that act is an exercise of police power or whether or not the Legislature can enact a law which will accomplish the purpose therein intended. We leave those questions undecided, confining ourselves to the constitutionality of the act as enacted.

Section 8 of article 11 of our Constitution provides:

"No tax shall be levied except in pursuance of a law, which shall distinctly state the object of the same, to which the tax only shall be applied."

Chapter 225, S. L. 1923, as amended by chapters 228 and 229 of Laws of 1925, levy a tax upon motor fuel and appropriate such tax for highway purposes. The object of the tax provided for in the said chapter 225, and amendments thereof, was to raise revenue for highway purposes by imposing a tax upon motor fuels. The tax is appropriated to the "construction, reconstruction, maintenance, or repair of highways or roads" under the jurisdiction of the state highway commission. Its title reads:

"An act to impose a tax upon the sale of motor vehicle fuels; * * * and for the disposition of the revenue derived therefrom. * * *"

And the act purports to have no other object than to raise revenue for highway purposes. Chapter 184, S. L. 1925, the act in question, authorizes the use of the motor fuel funds levied and appropriated under chapter 225, and amendments, to enforce chapter 184. It makes no difference whether its object and purpose be an exercise of the police power or a private purpose, it violates section 8 of article 11 of our Constitution, because it diverts funds levied and appropriated to another purpose. We think it entirely clear that the investment of the motor fuel funds in gasoline, oils, and lubricants for sale at retail is a diversion of the funds from the highway use to which it was appropriated, to another use. Especially is thus true when the funds are invested in permanent fixtures, tanks, and filling stations necessary in the retailing of gasoline. Under this provision of the Constitution, no taxes raised and appropriated for a special purpose may be used for another purpose. In re Limitation of Taxation, 3 S. D. 456, 54 N. W. 417; Aldrich v. Collins, 3 S. D. 154, 52 N. W. 854; 37 Cyc. 1588; Cooley on Taxation, § 1818; Morton, Bliss & Co. v. Comptroller General, 4 S. C. 430, 458; Lawrence National Bank v. Barber, 24 Kan. 534; Smith v. Haney, 72 Kan. 506, 85 P. 550; Chambe v. Durfee, 100 Mich. 112, 58 N. W. 661; Board of Education v. Board of Trustees, 113 Ky. 234, 68 S. W. 10; Lambert v. Board of Trustees, 151 Ky. 725, 152 S. W. 802, Ann. Cas. 1915A, 180; People v. Lippincott, 65 Ill. 548; Sleight v. People,

74 Ill. 47; School District No. 24 v. Smith, 97 Or. 1, 191 P. 506; Epperson v. Howell, 28 Idaho 338, 154 P. 621. For the foregoing reasons, the demurrer must be overruled. Defendants are allowed 30 days in which to answer the complaint if they desire to do so, but in the meantime the defendants are enjoined from doing any of the acts complained of in plaintiffs' complaint; such injunction to be effective and binding upon the defendants when they are served with a copy of a formal order properly attested and filed in this case.

Demurrer overruled, and temporary injunctional order allowed.

CAMPBELL, J., not sitting.