PUTNAM, Plaintiff, v. PYLE (DOWDELL, Intervenor), Defendant.

(232 N. W. 20.)

(File No. 7123. Opinion filed August 21, 1930.)

*O'Keeffe & Stephens,* of Pierre, for Plaintiffs.

*M. Q. Sharpe,* Attorney General, and *R. F. Drewry,* Assistant Attorney General, for Defendant.

*J. H. Johnson,* of Pierre, and *J. E. Whiting,* of Woonsocket, for Intervener.

PER CURIAM. On the 5th of August, Robert E. Dowdell filed in the office of the secretary of state a purported nominating petition to place the name of L. E. Corey as an independent candidate for Governor on the ticket to be voted at the next general election. At the primary election held on the 6th of May, said L. E. Corey was a candidate for nomination by the Democratic Party for the office of Governor. To become a candidate for the Democratic Party nomination he was required to and did file a petition to which was attached an affidavit required by law (chapter 118, § 5, Laws 1929) to the effect that he intended to vote the ticket of the Democratic Party at the primary and at the general election in November following, and that he agreed to abide by the result of the primary election in regard to his candidacy and if nominated and elected that he would qualify and serve as such officer. In the primary election Corey was opposed by D. A. McCullough, who was nominated and now is the Democratic Party nominee for the office of Governor.

Claiming numerous irregularities, omissions, and deficiencies in the petition to nominate Corey as an independent candidate for Governor both as to the form of the petition and the manner of its circulation and the signing and execution thereof, and further claiming that Corey is now disqualified for nomination as an independent candidate for the office of Governor after having participated in the primary election for nomination as a party candidate for the same office, A. L. Putnam, in his own behalf as an elector and also in behalf of the Democratic Party as state chairman of that party, commenced this action, an original proceeding in this court, and by his application asked for "an Order requiring the above named Defendant to show cause before this Court at such time as shall be fixed by the Court why the said Defendant should not be by the Order of this Court enjoined and restrained from recognizing, accepting or acting upon the certain document filed in her office on August 5, 1930, purporting and pretending to be a Certificate of Nomination or a Petition Nominating L. E. Corey as a candidate at the next General Election in the State of South Dakota for the Office of Governor of said State, and why she should not be enjoined from causing, or permitting, his name to be placed upon the Official Ballot at said Election as such candidate, and why it should not be adjudged that said instrument is wholly insufficient and is null and void and of no effect." A show cause order was issued by this court upon such application returnable August 14th. On the return day defendant appeared (represented by the Attorney General as counsel) and moved to quash the order and demurred to plaintiff's application and complaint on the ground: "That no facts sufficient to call into exercise the original jurisdiction of this Court are stated in the application, affidavit or complaint herein; that no sufficient reasons are shown why said action or proceeding was not brought in the Circuit Court; that it appears upon the face of the application, affidavit and complaint that the introduction of much evidence may be required to establish alleged private and political rights without any showing of special circumstances justifying the exercise of jurisdiction by this Court and that said action and proceeding is not brought for any of the prerogative purposes of the sovereign power nor by or on behalf of the sovereign state. II. That it appears upon the face of the ap-

plication, affidavit and complaint that there is a defect of parties defendant, Robert E. Dowdell and L. E. Corey being named and shown therein to be parties in interest and necessary parties defendant to a determination of the questions involved. III. That it appears upon the face of said Application, Affidavit and Complaint that they or any of them do not state facts sufficient to constitute a cause of action or to entitle the plaintiff to the relief demanded or any relief." Further answering, respondent admitted some of the facts concerning the preparation and execution of the independent nominating petition and denied others. Respondent also in her return alleged that she had performed her duties in regard to certifying the candidates and that before the service of the show cause order she had certified to the county auditors the name of L. E. Corey as an independent candidate for the office of Governor. Robert E. Dowdell, who filed the petition and who was instrumental in its circulation, asked leave and was permitted to intervene in this action. He appeared by special counsel and moved to quash the order and demurred to the application and complaint on substantially the grounds set forth in respondent's demurrer and motion to quash. Oral argument was heard, and counsel submitted typewritten briefs to settle legal questions presented, with the understanding that should this court find no legal question decisive of the action, then respondent and intervener should be permitted to traverse the complaint concerning the irregularities, omissions, and deficiencies of the nominating petition. For that reason at this time only such questions as are independent of those allegations will be considered.

 There is one question, namely, the qualifications of Corey to stand as an independent candidate for Governor, that is decisive of this action and renders it unnecessary to continue this cause for the taking of proof; but before discussing that question we take this opportunity to outline the proper practice in actions of this character. Respondent and intervener challenge the jurisdiction of this court to hear and determine this action under the facts pleaded. The objections are two-fold: First, it is contended that no sufficient facts are alleged to warrant this court in exercising original jurisdiction; second, that plaintiff has not pleaded a special interest entitling him to the relief asked in any court.

As to the first contention, section 3, article 5, of our Consti-

tution confers upon the Supreme Court power to issue writs of mandamus, quo warranto, certiorari, injunction, and other original and remedial writs in such cases and under such regulations as may be prescribed by law. In Everitt v. County Commissioners, 1 S. D. 365, 47 N. W. 296, this court held that it would not ordinarily exercise its original jurisdiction to enforce private or local rights. In Oss v. Depositors' Guaranty Fund Comm., 48 S. D. 258, 204 N. W. 21, this court refused to exercise such jurisdiction to enforce private rights, but it is obvious that the reasons that may impel this court to act are not inherently essential to the jurisdiction. Parsons v. Smith, 48 S. D. 445, 205 N. W. 36. When this court has determined its duty to act, it has jurisdiction. The reasons may be considered to guide this court in exercising its discretion to act or refuse to act, but do not affect the ultimate jurisdiction expressly conferred by the Constitution. In this case the need of prompt and final action, coupled with the character of the action which will be considered later, amply support this court in taking original jurisdiction in harmony with previous decisions of this court.

 On the second contention respondent seems to assume that this action is in equity, and that plaintiff must plead a special right or interest which a court of equity will protect. If this is an action in equity, we think the exceptions are well taken. Equity is a system of jurisprudence limited and bounded by well-defined rules. It is also well settled that equity will not protect political rights, but its jurisdiction is confined to the protection of property and civil rights. Fletcher v. Tuttle, 151 Ill. 41, 37 N. E. 683, 25 L. R. A. 143, 42 Am. St. Rep. 220; Green v. Mills ('C. C. A.) 69 F. 852, 30 L. R. A. 90; U. S. Standard Voting Machine Co. v. Hobson, 132 Iowa, 38, 109 N. W. 458, 7 L. R. A. (N. S.) 512, 119 Am. St. Rep. 539, 10 Ann. Cas. 972; State ex rel. McCaffery v. Aloe, 152 Mo. 466, 54 S. W. 494, 47 L. R. A. 393. Various reasons are given for this limitation upon the jurisdiction of equity, chief of which is that such rights may be otherwise adequately protected. It is not because such rights are not a matter of concern. Political rights are protected by the state and the state has provided ample means for the protection of its sovereignty, franchises, and prerogatives by means of prerogative writs common to law courts. It may be noted that the several writs enumerated in

the Constitution which this court is empowered to issue are all prerogative writs except injunction. Injunction is a writ commonly used by courts of equity as an incident to the enforcement of its commands and decrees.

The jurisdiction of this court is principally appellate, and its original jurisdiction in ordinary actions at law or in equty are extremely lmited, but in the use of extraordinary remedies where the state is a party and a prerogative writ issues to protect the sovereignty, franchises, and prerogatives of the state, this court has original jurisdiction under the Constitution in such cases and under such regulations as may be prescribed by law, and unless limited by statute such jurisdiction is as extensive and complete as that of any court. If under the facts alleged plaintiff is not entitled to the relief asked in this court, he is not entitled to such relief in any court. Spelling, in the preface to his work on Extraordinary Relief, vol. I, says:

"No maxim is more firmly rooted in English and American jurisprudence than the one which, given a free translation, declares that 'no wrong shall exist without a remedy.' In conformity with the spirit of this ancient maxim, when the English Lord-Chancellors of former times found the common law writs inadequate to redress a peculiar grievance, they invented an extraordinary remedy which they afterwards resorted to frequently but cautiously to meet the exigencies of such cases as they arose, to prevent hardship and injustice. They viewed such extraordinary forms of relief very much as the medical profession do poisonous antidotes—to be administered only in extremis, or after ordinary treatment has been tried without success. This view still prevails to a great extent, but the use of some of the forms of extraordinary relief has been in many jurisdictions considerably enlarged and extended by statutes.

"While the reasons for resorting to such remedies, and the occasions justifying their use, are substantially the same now as formerly, yet there exists at present but little of that extreme solicitude which once existed lest their functions be perverted and abused. Consequently the writs of injunction, habeas corpus, mandamus, prohibition, quo warranto, and certiorari, are now granted in an almost perfunctory manner upon prima facie show-

ing, very much as ordinary process; and the principles governing their use form a very important branch of remedial jurisprudence."

 Injunction as a writ in equity may be, and often is, used to protect taxpayers from unlawful expenditure of public money, but that protects a property right. Such writs may be, and often are, used to protect property and civil rights of suitors although their actions may largely protect public rights, but they are not used in equity to protect political rights because the law furnishes adequate protection to such rights. At common law prerogative writs were issued at the suit of the crown in the court of Kings Bench to protect the sovereignty, franchises, and prerogatives of the crown. One sovereign right of the state is to have its laws observed and administered by its officers charged with that duty. Theoretically, the state was the party in interest and compelled obedience of the officer in order to protect the citizen entitled to the performance of the official act. The form of such actions is still in common use, but it is well known that many of the prerogative writs issued in actions by the state serve a limited use to protect private rights of but little public concern. The form of the action is important only in prescribing and limiting the issues under the principles governing the use of such writs. This action is not in the name of the state, but of that we will speak later. The form of the action may not be controlling in determining its character. We first inquire if injunction may in some cases be used as a prerogative writ. There is authority that it may be. State v. Cunningham, 83 Wis. 90, 53 N. W. 35, 50, 17 L. R. A. 145, 35 Am. St. Rep. 27, considered the nature of injunction used in a proceeding such as here involved and held that, under the Constitution of Wisconsin enumerating the writs as ours does, injunction may be and is properly used in some cases as a prerogative writ and as a correlative of mandamus. That court says:

"Where there is nonfeasance, mandamus compels duty. Where there is malfeasance, injunction restrains wrong. * * * And it is very safe to assume that the constitution gives injunction to restrain excess in the same class of cases as it gives mandamus to supply defect. * * * The prerogative writs proper can issue only at the suit of the state, or the attorney general in the right of the state; and so it must be with the writ of injunction, in its use as a quasi prerogative writ."

■ In this state, however, we have the counterpart of mandamus in the writ of prohibition (section 3019, Rev. Code 1919, as amended by chapter 424, Laws 1921), and we think the proper procedure in this case would have been by writ of prohibition. At common law and in this state prior to the amendment of 1921 (chapter 424) the writ of prohibition was confined to prohibiting judicial or quasi judicial action in excess of jurisdiction. State ex rel. Byrne v. Ewert, 36 S. D. 622, 156 N. W. 90; State ex rel. Isaacson v. Parker, 40 S. D. 102, 166 N. W. 309; State ex rel. Commonwealth Fnance Corp. v. Circuit Court of Beadle County, 43 S. D. 421, 179 N. W. 691. After these decisions the Legislature by the amendment of 1921 extended the use of the writ of prohibition to prohibit unauthorized administrative acts as well as judicial action in excess of jurisdiction, and since then proceedings of this nature could be fully determined under a writ of prohibition.

■ By the use of such writ the issues would have been greatly simplified. The jurisdiction of this court, the nature and extent of the inquiry, the necessary parties to the action, the relief to be granted, the interest of the state and relator, and other questions that might arise, could all be determined by resort to the principles governing such writs. As commenced we have had to consider objections valid in equity actions, such as parties to the action, their interests to be protected, and whether such interests can be protected in equity or by appropriate legal proceedings. We have concluded the action is not in equity because plaintiff is not seeking equitable relief or the protection of rights cognizable by equity.

■ Must the action then be dismissed, or may it proceed as an action in prohibition? There has been a common practice in recent cases before this court to proceed in the manner here attempted, and this court has heretofore determined such actions without objection to their form, and the trial, issues, and judgment have been appropriate to procedure under writ of prohibition. O'Brien v. Pyle, 51 S. D. 385, 214 N. W. 623; Jacobs v. Pyle, 52 S. D. 537, 219 N. W. 247; Morford v. Pyle, 53 S. D. 356, 220 N. W. 907.

As this action now stands, plaintiff seeks relief that he might have as relator in an action in the name of the state; the application and order present substantially the same issues and the parties de-

fendant are the same as though the proceeding were under a writ of prohibition. To refuse to proceed with this action as one in prohibition we think would be to sacrifice substance to form. We will therefore treat the proceeding as though in due form under a prerogative writ by the state upon relation of plaintiff.

██ ██ The issuance of such writ is within the sound discretion of the court, and when issued by a court of competent jurisdiction they confer upon the court jurisdiction to hear and determine them to the end that the sovereignty, franchises, and prerogatives of the state may be protected and the public and private rights of all persons secured by an orderly and legal administration of the laws by the state's officers. By such procedure the rights of all persons are protected through the state as the party plaintiff. Corey can have no right not conferred by law and cannot be harmed by a judgment prohibiting illegal action by the secretary of state. If he is interested in sustaining the action of the officer and fears the court may not be properly advised and in consequence an improvident judgment may be rendered, he may apply to the court for leave to intervene or to appear by counsel as amicus curiæ, but he is not a necessary party.

██ ██ On the question of Corey's right and qualifications to stand as an independent candidate for Governor at the next general election, we think he is disqualified by the terms of chapter 118, § 5, Laws 1929, whereby he was required as a condition to becoming a candidate for a party nomination and having his name printed on the ballot at public expense to subscribe an oath in which he agreed to abide by the result of the primary in regard to his candidacy. True there is no express provision that he shall not be an independent candidate, but that is the only logical inference to be drawn from the requirement of the oath. He could not do otherwise than abide by the result of the primary concerning his nomination as a party candidate. Without the required number of votes he certainly could not stand as a nominee of the Democratic Party or any other party, since all party nominations are made at the same time under the primary law. If the oath pertains to his candidacy at all, it must refer to his candidacy as an independent, since that is the only way he could thereafter become a candidate. Treating the oath as an agreement, there is sufficient consideration therefor in the opportunity to become a candidate

for party nomination and to have his name printed on the ballot at the primary election at public expense. It may be suggested that Corey did not seek the nomination as an independent candidate, but that electors exercised their right to petition and have his name placed upon the ballot as such candidate without his consent. The record does not disclose that he did consent, and it may be conceded that the filing of the petition was without his procurement or consent and that since the filing he has not had an opportunity to withdraw. But electors cannot compel one to stand as a candidate against his will nor nominate one disqualified to accept the nomination. The oath amounts to a previous withdrawal. To hold otherwise would be to render such declaration of the candidate meaningless. That this limitation is constitutional and binding and does disqualify the person participating in a primary election to thereafter stand as an independent candidate is supported by good authority. State ex rel. McCarthy v. Moore, 87 Minn. 308, 92 N. W. 4, 59 L. R. A. 447, 94 Am. St. Rep. 702. See also Heney v. Jordan, 179 Cal. 24, 175 P. 402; 20 C. J. 126. This view of the law is also taken in an opinion rendered by the Attorney General of this state to the state's attorney of Deuel county, S. D., under date of February 24, 1930, wherein it is said:

"By signing a declaration a candidate agrees to abide by the result of the primary; this was evidently designed to make it impossible for a defeated candidate in a primary election to become a candidate in the general election against his successful opponent who has received the nomination of his party in the primary. It is therefore my opinion that a defeated candidate in the primary election can not have his name placed on the ballot as an independent candidate against his opponent who was successful in the primary election."

We think that Corey by his own act in becoming a candidate at the primary election for the Democratic nomination as candidate for Governor, and executing under oath the declaration required by law in connection with said primary candidacy, has rendered himself disqualified and ineligible to be an independent candidate for said office of Governor at the fall election, whether such independent candidacy is sought or promoted by himself or by others. And because of such ineligibility and disqualification upon his part we hold that the petition heretofore filed in the office of the secretary

of state purporting to nominate the said Corey as an independent candidate for Governor at the fall election is of no force or effect.

The prayer of the plaintiff herein is that said nominating petition should be adjudged null and void; that the defendant should be enjoined from causing or permitting the name of the said Corey to be placed upon the ballot at the November general election as a candidate for the office of Governor; and that the defendant be restrained from certifying the name of the said Corey as candidate for Governor to the county auditors of this state as required by section 7207, Rev. Code 1919, reading as follows:

"Subject to the provisions of section 7132 the secretary of state not less than eighty-five nor more than eighty-nine days before the day fixed by law for the election of the persons nominated, shall certify to the county auditor of each county within which any electors of this state vote for such officer or officers as may have been nominated at the preceding primary, or whose certificates of nomination have been filed in his office, the name and description of each person so nominated."

The eighty-fifth day before the November election was Monday, August 11, 1930. This proceeding was instituted on Friday, August 8, 1930, and the order to show cause herein was served upon the defendant on said 8th day of August at 3:55 o'clock p. m. The defendant has made return that about two hours and twenty-five minutes prior to the service of said order upon her she had certified out the names of candidates for office to the various county auditors pursuant to section 7207, including the name of Corey as one of the candidates for Governor. We are of the opinion that such certification, in so far as it embraced and included the name of Corey as a candidate for Governor, was without authority of law and null and void, and the order and judgment of this court in the premises should and will be as follows:

First, that the nominating petition filed in the office of the secretary of state on August 5, 1930, purporting to nominate L. E. Corey of Wagner, S. D., as a candidate for the office of Governor at the general election to be held November 4, 1930, is null and void and of no force and effect.

Second, that the defendant be permanently restrained and enjoined from causing or permitting the name of L. E. Corey to be or appear as a candidate for Governor upon the ballots to be used at the general election to be held November 4, 1930.

Third, that the act of the defendant in certifying to the county auditors of this state on August 8, 1930, the name and description of L. E. Corey of Wagner, S. D., as having been duly nominated as a candidate for the office of Governor at the general election to be held November 4, 1930, is null and void and without authority of law and of no force or effect, and that the same be by the county auditors of this state disregarded and held for naught.

Fourth, that the defendant, secretary of state, forthwith nunc pro tunc, and as of date of August 8, 1930, recertify to the county auditor of each county in this state within which any electors vote for the office of Governor the names of all persons who may have been nominated at the preceding primary or whose certificates of nomination have been filed in her office in accordance with law as candidates for the office of Governor of this state to be voted upon at the general election to be held November 4, 1930, omitting from such certification the name and description of L. E. Corey of Wagner, S. D., and that she send to each of said county auditors with said nunc pro tunc amended and corrected certification of duly nominated candidates for Governor a certified copy of the judgment to be entered by this court herein, said certified copies to be furnished by the clerk of this court without cost.

All the Judges concur.