STATE ex rel. GRIGSBY et al., Petitioners v. OSTROOT, as Secretary of State et al., Defendants

(64 N. W.2d 62)

(File No. 9461. Opinion filed April 23, 1954)

**Sioux K. Grigsby,** Per Se.

**Rex M. Warren, John S. Murphy,** Sioux Falls, for Plaintiffs and Petitioners.

**Ralph A. Dunham,** Atty. Gen., **E. D. Barron,** Asst. Atty. Gen., Pierre, South Dakota, for Defendant.

**T. R. Johnson, Roy Willy, Charles Lacey, M .T. Woods,** Sioux Falls, for intervenor.

**Roswell Bottum,** Sturgis, **Lem Overpeck,** Belle Fourche, Amicus Curiae.

PER CURIAM. This is an original ex rel. proceeding in prohibition. Plaintiffs seek to prohibit the defendant, Secretary of State, from certifying the name of Joe J. Foss as a candidate for the office of Governor in the 1954 primary election. Joe J. Foss was permitted to intervene and has become a party to these proceedings.

Plaintiffs are residents, citizens, electors and taxpayers of Minnehaha County and members and officers of the Republican party. They requested the Attorney General to commence these proceedings but he refused.

Joe J. Foss is a member of the Republican party and has circulated petitions to nominate him as a candidate for Governor at the primary election to be held on June 1, 1954 and has presented said nominating petitions to the defendant, Secretary of State. These petitions on their face appear to be proper and regular in form and conform to all statutory requirements. The Secretary of State accepted the petitions

and caused them to be filed in her office and unless prohibited will certify Joe J. Foss as a candidate for Governor.

It is the contention of the plaintiffs that Joe J. Foss is ineligible to be elected Governor in 1954 and being ineligible he should not be permitted to become a candidate for the office in the June primary. This contention is based upon Art. 3, § 12 of the Constitution of this state which provides:

"No member of the legislature shall, during the term for which he was elected, be appointed or elected to any civil office in the state which shall have been created, or the emoluments of which shall have been increased during the term for which he was elected, nor shall any member receive any civil appointment from the governor, the governor and senate, or from the legislature during the term for which he shall have been elected, and all such appointment and all votes given for any such members for any such office or appointment shall be void; nor shall any member of the legislature during the term for which he shall have been elected, or within one year thereafter, be interested, directly or indirectly, in any contract with the state or any county thereof, authorized by any law passed during the term for which he shall have been elected."

It appears without dispute that Joe J. Foss was elected to the office of state representative from Minnehaha County at the general election held November 4, 1952; that he was elected for a two-year term and on January 6, 1953, qualified for the office and served as a state representative during the 33rd regular session of the legislature. In this session of the legislature there was enacted Ch. 287, Laws 1953, which increased the salary of Governor from $9100 to $9500. There was also enacted at this same session of the legislature Ch. 316, Laws 1953, as follows:

"In the event any member of the South Dakota Legislature during his or her legislative term shall be appointed or elected to any civil office in the state the emoluments of which have been increased by the session of the legislature of which he or she

is a member, such increased emoluments shall not apply to such office during the term for which he or she is appointed or elected."

At this point also we call attention to the fact that prior to the amendment of Art. 21, § 2 of the Constitution, in 1946, the salaries of the members of the legislature, the governor, lieutenant governor, the judges of the supreme and circuit courts, the secretary of state, state treasurer, state auditor, commissioner of school and public lands, superintendent of public instruction and attorney general were fixed by the constitution and the legislature had no power to increase the salaries of these named officers. The 1946 amendment to Art. 21, § 2, is as follows:

"The legislature by two-thirds vote of each branch thereof at any regular session may fix the salary of any or all Constitutional officers including members of the legislature. In fixing any such salary the legislature shall determine the effective date thereof and may in its discretion decrease or increase the salary of any officer during his term."

It is plaintiffs' contention that Joe J. Foss is ineligible for the office of Governor because of the provisions of Art. 3, § 12 of the Constitution, Foss being a member of the session of the legislature which increased the salary of the Governor.

Three questions are presented—1st, Do plaintiffs have a sufficient interest to maintain this action? 2nd, Are the actions of the Secretary of State in certifying the name of a candidate who had filed a proper petition in her office subject of being prohibited because of the ineligibility of the candidate? 3rd, Is intervenor ineligible for the office of Governor? No fact questions are presented, only questions of law.

It is our view that the questions first and second above set forth are answered by the opinion in the case of Putnam v. Pyle, 57 S.D. 250, 232 N.W. 20. See also White Eagle Oil & Refining Co. v. Gunderson, 48 S.D. 608, 205 N.W. 614, 43 A.L.R. 397; State ex rel. Bryant v. Dolan, 61 S.D. 530, 249 N.W. 923; State ex rel. Roberts v. Morrison, 64 S.D.

516, 268 N.W. 647; State ex rel. Jensen v. Kelly, 65 S.D. 345, 274 N.W. 319. In all of these cases as in this case it is not mere private rights that give rise to the controversy but rather rights of the public which are affected directly. The North Dakota court in the case of State ex rel. Linde v. Taylor, 33 N.D. 76, 156 N.W. 561, 563, L.R.A.1918B, 156, made a good statement of the rule as follows:

"The private relator, in his capacity as a citizen and taxpayer, merely informs the court of the infringement which has been or is about to be made upon the sovereignty of the state or its franchises or prerogatives or the liberties of its people, and the court, by virtue of the power granted by the Constitution, commands that the suit be brought by and for the state, even though the Attorney General may refuse to bring this action or consent to its institution."

Our present statute, SDC 16.0210, which prescribes the form of nominating petitions requires as a part of the declaration of the candidate, the statement that he is legally eligible for the office. This provision came into our law by Ch. 118, Laws 1929, and was in full force and effect at the time of decision in Putnam v. Pyle. There was no such requirement at the time of the decisions in State ex rel. McNulty v. Glasner, 33 S.D. 241, 145 N.W. 547, and State ex rel. Ochsenreiter v. Blegen, 26 S.D. 106, 128 N.W. 488. The legislature having prescribed that eligibility for office is an essential of having one's name printed on the ballot gives force to the statement in Putnam v. Pyle [57 S.D. 250, 232 N.W. 24] that a candidate for office "can have no right not conferred by law and cannot be harmed by a judgment prohibiting illegal action by the secretary of state."

■ ■ In this case, as in Putnam v. Pyle, the need of prompt and final action is essential "to the end that the sovereignty, franchises, and prerogatives of the state may be protected and the public and private rights of all persons secured by an orderly and legal administration of the laws by the state's officers." Under this prerogative writ of prohibition and the rule announced in Putnam v. Pyle and other cited cases plaintiffs have a sufficient interest to maintain

this action on behalf of the state and it becomes the duty of this court at this time to determine the eligibility of intervenor for the office which he seeks.

We consider first the 1946 amendment to Art. 21, § 2, and its significance, especially with reference to Art. 3, § 12.

■ ■ It is fundamental in construing constitutional provisions that effect should be given to the intent of the people adopting them. Schomer v. Scott, 65 S.D. 353, 274 N.W. 556; State ex rel. Payne v. Reeves, 44 S.D. 568, 184 N.W. 993. As the constitution was originally adopted, Art. 3, § 12 could have no application, and clearly was not intended to have any application, to members of the legislature being elected to any office the salary of which was fixed by the constitution. While it is true the constitution provided that after the year 1890 the legislature could increase the salaries of the governor and judges of the supreme court from $2500 to $3000 annually and the salaries of circuit judges from $2000 to $3000 annually this increase was made before 1900 and since then Art. 3, § 12 could have no application to a member of the legislature being elected to these offices. It appears, therefore, that for almost fifty years prior to 1946, Art. 3, § 12 had no application, and could have no application to those offices the salary of which was fixed by the constitution, including the governor and judges of the supreme and circuit courts.

The question then arises, was it the intent in adopting the 1946 amendment to broaden the scope of Art. 3, § 12 and make it applicable to offices to which it was not applicable theretofore. It was the clear purpose of the 1946 amendment to authorize the legislature to fix the salaries of those offices which had been fixed by the constitution, and under this amendment all of such officers "including members of the legislature" were placed in the same class or category. To safeguard this power given the legislature it was required that a bill fixing salaries of constitutional officers have the affirmative vote of two-thirds of the members of each branch thereof. This amendment also provides that the legislature "may in its discretion decrease or increase the salary of any officer during his term", contrary to other provisions of the

constitution as originally adopted. See Art. 12, § 3; Art. 3, § 23.

Thus it appears that in 1946 the whole concept of fixing salaries of constitutional officers in this state was altered, and the unrestrained power to fix salaries was lodged in the legislature, safeguarded always by the requirement of a two-thirds vote and the fact that members of a legislature fixing salaries, are subject to the will of the electors at the next election when they can express their approval or disapproval at the polls. This new concept is no doubt the result of conditions vastly different from those existing in 1889, when the original constitution was adopted. As pointed out in the recent Florida case, State ex rel. West v. Gray, 70 So.2d 471, 474, "with the free dissemination of news and the close coverage given the legislative deliberations by press and radio, the people are much better informed concerning the actions of their legislators than they were in 1885, * * *." In other words, the dangers which Art. 3, § 12 sought to guard against in 1889 so far as elective office is concerned are minimized by modern conditions. Should it be held that intervenor is eligible to the office which he seeks he will have to run in the primary election against formidable opposition, and his condidacy, will in truth and in fact, be submitted to an electorate which through modern means will be well informed as to all his legislative acts.

Such being the intent and purpose of the 1946 amendment, it was clearly not intended that some other provision of the constitution adopted under the old concept relating to salaries should override or defeat that which the new was intended to accomplish. Should we give effect to Art. 3, § 12 as here contended we are of the view that such holding would be in conflict with the intent and purpose of the 1946 amendment. As stated above this amendment places all of those officers whose salary was fixed by the constitution in the same class or category, including members of the legislature. It is not reasonable to believe that it was intended that after giving the legislature power to fix the salary of its members it was further intended that by increasing the salaries of its members by a two-thirds vote it thereby rendered every member of that legislature

ineligible to seek re-election. Certainly there was no thought by the legislature or the people of this state in 1947 when the thirtieth session of the legislature increased the salaries of its members that by so doing it rendered each member ineligible to seek re-election to the thirty-first session. We take judicial notice of the fact that many members of the thirtieth session were re-elected. It is significant, too, we believe, that the act of the thirtieth session of the legislature, Ch. 241, Laws 1947, first fixing salaries after the adoption of the 1946 amendment included in one act all of the officers, including members of the legislature, whose salaries had theretofore been fixed by the constitution, indicating that the legislature was of the opinion, as we have herein held, that all of such officers were in the same class or category so far as treatment is concerned under the 1946 amendment. All of these officers being in the same class, and the said Art. 3, § 12, never having applied to this class prior to the adoption of the 1946 amendment, and it being apparent that as to one member of the class it was not intended that such member render itself ineligible to seek re-election by voting on increase in its own salary, we are of the view that to give full purpose and effect to the 1946 amendment it should be held that by its adoption there was no intention of broadening the scope of Art. 3, § 12, beyond that which it has been for the last fifty years. In other words we do not believe it was the intention of the people in adopting the 1946 amendment to provide that every member of the legislature which raised the salary of any of the class of offices which had not theretofore come within the meaning of Art. 3, § 12, thereby became ineligible during his term to seek election to such office because of the provisions of the said Art. 3, § 12. If it were the purpose to bring members of the legislature which increased salaries under the power granted in the 1946 amendment within the scope of Art. 3, § 12, it would seem that the first to be excluded from seeking election during his term would be a member of the legislature which voted an increase in the salary of its members, yet to so hold we believe would virtually nullify the real purpose of the amendment. As stated above it was the clear purpose of the amendment to authorize the legislature to fix

the salary of its members, and as a practical matter should we hold that after fixing the salary every member of that legislature would be ineligible for re-election, the result would simply be that the salary would not be fixed, especially is this true in view of the requirement of the two-thirds vote. Certainly if it were not the intention to render ineligible a legislator who increased his own salary from running for re-election, it was not the intention to render a member of a legislature which voted an increase for some other office, in the same class so far as salaries are concerned as that of a legislator, ineligible to run for such office. We so hold.

The above holding relates only to election to office. No question is here presented relating to appointment to office of a member of a legislature which has increased salaries, and of course we express no view thereon.

The construction we have placed on the 1946 amendment renders intervenor eligible for the office he seeks. Such eligibility is in no way dependent upon Ch. 316, Laws 1953, and it is not necessary or proper in this proceeding to pass on the validity of this 1953 law.

The application for the writ of prohibition is denied.

SMITH, P. J., and ROBERTS, RUDOLPH and LEEDOM, JJ., concur.

SICKEL, J., dissents.

SICKEL, J. (dissenting). In this, as in all actions, it must appear that the parties are engaged in an actual and justiciable controversy. A controversy is justiciable only when there is present an active antagonistic assertion of legal rights on one side and denial thereof on the other concerning a real, not a mere theoretical question and where it affects a right which can be finally settled and determined by entering a judgment for either party.

The secretary of state is the defendant in this action. She has filed intervenor's nominating petitions and will certify intervenor as a candidate for the primary election unless restrained by the court. She has not raised the question of the intervenor's ineligibility for the office of governor. The only briefs or arguments presented to the court in this case

are those favorable to the entry of judgment for intervenor for the relief demanded in his complaint. Therefore, in my opinion, the secretary of state is not an adverse party.

Disqualification of a candidate cannot be tested before election by residents, electors and taxpayers in an action against the secretary of state, either by writ of prohibition or under the Uniform Declaratory Judgment Act, and when so brought the court has no jurisdiction to enter a binding judgment. The courts cannot decide speculative rights or duties which may not arise in the future, but only such rights and duties as involve actual controversy, presented by adverse parties and in which a binding judgment may be entered. Under the circumstances any judgment entered in this case must necessarily be advisory only, and the question of eligibilty may still be litigated later by the real parties in interest.

In my opinion judgment should be entered dismissing the action.