HAINES, Appellant, v. CITY OF RAPID CITY, et al, Respondents.

(238 N. W. 145.)

(File No. 7244.   Opinion filed October 5, 1931.)

*George E. Flavin,* of Rapid City, and *Churchill & Benson,* of Huron, for Appellant.

*Bangs & Rudesill* and *George Williams,* all of Rapid City, for Respondents.

RUDOLPH, J. This is an action brought by the appellant, John C. Haines, as a resident and taxpayer in and for the city of Rapid City, Pennington county, S. D., seeking to enjoin the defendant city and the defendant members of the city council of the city from entering into any contract with the defendant Rapid City Municipal Light Company, or acting in any manner pursuant to purported Ordinance No. 350 of the city of Rapid City, which purported ordinance was submitted to the vote of the electors of Rapid City at a special election on the 22d day of April, 1930. Ordinance No. 350, as submitted at said special election to the electors, is as follows, so far as material to this opinion:

"Be it ordained by the Board of Commissioners of the City of Rapid City, Pennington County, South Dakota:—

"First:—That there is hereby granted to Rapid City Municipal Light Company, a Corporation of Rapid City, South Dakota, its successors and assigns, hereinafter referred to as the Company, a Franchise entitling it for a period of twenty years from and after the passage and approval of this ordinance to the use of the streets, alleys and public places of the City of Rapid City, Pennington County, South Dakota, hereinafter referred to as the City, for the erection, construction and maintenance of an electric light and power plant with all necessary equipment, transmission and distribution system for furnishing electrical energy to the said City of Rapid City and to the inhabitants of said City and its immediate vicinity, subject to the following conditions, restrictions and limitations, viz.:

"C. Immediately upon the completion thereof the Company shall deliver possession of said plant, transmission and distribution system and equipment to the City; and the City undertakes to operate the same with all reasonable efficiency and economy under the following schedule of rates, to-wit:—Then follows the schedule of rates.

"Whenever the above schedule of rates shall cause a revenue which after allowance for all betterments and extensions shall be sufficient to pay out the total valuation of the said plant, in a period of time less than ten years from the time the said plant begins operations, then the City Commission may place in effect a lower schedule of rates so calculated as to produce the amount of revenue necessary to complete the paying out of the said valuation in said manner in said period of ten years.

"F.   In case of Ninety days default in the payment of any of said pledge orders the Company shall either permit the City to continue to operate said plant if it desires to do so, or shall take possession of and operate the said plant, equipment and system on the schedule of rates provided for by Sub-division 'C' within the life of this Franchise until the full purchase price with interest has been paid; whereupon the same shall revert to the City."

The trial court made and entered findings of fact which are acceptable to both parties.   The error assigned relates only to the conclusions of law and the judgment.   The conclusions of law, so far as material to this opinion, are as follows:

### "Conclusions of Law

"III.   That the language of Sub-division 'C' of Ordinance No. 350 in the last paragraph thereof as follows, to-wit:

" 'Whenever the above schedule of rates shall cause a revenue which after allowance for all betterments and extensions shall be sufficient to pay out the total valuation of the said plant, in a period of time less than ten years from the time the said plant begins operations, then the City Commission may place in effect a lower schedule of rates so calculated as to produce the amount of revenue necessary to complete the paying out of the said valuation in said manner in said period of ten years.' and the language in Subdivision 'F' of Ordinance No. 350 beginning after the word 'system' and ending before the word "within," as follows, to-wit:

" 'On the schedule of rates provided for by Sub-division "C," has the force of an attempted fixation of the rate schedule in Subdivision "C" Ordinance No. 350 as an irrevocable schedule of rates and unalterable save in compliance with the provisions of the quoted language.'

"IV. That the proposed schedule of rates embodied in Sub-Division 'C' Ordinance No. 350 is subject to revision, modification and adjustment by the properly constituted authorities under the laws of the State of South Dakota, and the attempted fixation of irrevocable rates as outlined in Conclusion numbered Three is unauthorized, illegal, null and void and of no force, effect or avail.

"VI. That the Municipality of Rapid City, South Dakota has power to enter into the project contemplated in Ordinance No. 350 and to grant such franchise save and except in the particulars outlined in Conclusions numbers Three and Four herein."

The trial court, by its conclusion of law No. 3, determined that subdivisions C and F of Ordinance 350 attempted the fixation of irrevocable rates, and was therefore "unauthorized, illegal, null and void, and of no force effect, or avail," and in conclusion of law No. 6 determined that the city of Rapid City had power to enter into the project as contemplated in Ordinance No. 350 and to grant the franchise, except that the city had no authority to enter into a contract wherein the provisions of subdivisions C and F of the ordinance were attempted to be carried out. By the judgment, the city was enjoined and restrained from "placing in effect, or to enforce, or to act under subdivision C of the ordinance, unless the rate schedule therein, at the time, should have been finally confirmed and approved by the court, or unless no question regarding the rate schedule should have been raised at the time in any court. It further provided that, in the event that there was pending litigation at the time the contract was entered into concerning the propriety of said rates, then, upon the application to the court, "this injunctive order may be modified to permit of enjoined parties collecting such rate and under such terms as shall seem to the Court to be proper during the pendency of such litigated question." There is no appeal by any of the defendants.

The effect of the trial court's decision is as follows: Subdivision C of the ordinance, and that part of subdivision F as follows "on the schedule of rates provided for by subdivision C." is an attempted fixation of irrevocable rates, and as such is illegal, void, and of no effect. As a result of this conclusion, the defendants are by the judgment permanently enjoined from entering into any contract, the result of which would be the fixation of the

irrevocable rate found to exist in subdivisions C and F of the ordinance. Whether the trial court was right in entering the judgment enjoining the defendants as it did is not before this court. There is no appeal from that portion of the judgment restraining the defendants from acting under the provisions of subdivision C of the ordinance, and, as this matter now stands, therefore, the defendants are enjoined and restrained from acting under that portion of the ordinance found by the court to constitute an irrevocable schedule of rates.

Accepting the above conclusions of the trial court as correct, in so far as they relate to subdivision C, and we must, for they are not complained of, and further keeping in mind that the defendants are enjoined as above pointed out, we have the following situation:

The voters of Rapid City were called upon to vote upon Ordinance 350, subdivisions C and F of which fixed irrevocable rates to be charged for electric light and power during the continuance of the franchise therein granted. Subdivisions C and F are now determined to be illegal and void, and the members of the city commission, whose duty it is to carry out the provisions of Ordinance 350 by entering into an agreement with the Rapid City Municipal Light Company, to whom the franchise was granted, and the Rapid City Municipal Light Company, are enjoined from entering into any agreement wherein the irrevocable rates fixed in subdivisions C and F are carried into effect.

The trial court determined that the illegality of subdivisions C and F in fixing a schedule of irrevocable rates would not affect the remaining portions of the ordinance. With this holding of the trial court which is assigned as error by the appellant, we are unable to agree, and this conclusion will, of necessity, dispose of the case.

The respondent contends that the rule that the provisions of a franchise ordinance relating to the fixing of rates may be invalid without affecting the balance of the ordinance is supported by the courts of many jurisdictions, and cites especially the case of Brummitt v. Ogden Waterworks Co., 33 Utah, 289, 93 P. 828, 835. This was a case wherein the ordinance fixed the rates to be charged for water for a period of time, and the attempted fixation was held to be illegal, but the court held that the balance of the

ordinance was unaffected. However, it was pointed out by the court that the "city is continually receiving the fruits of the contract, and the inhabitants enjoy a like benefit. The waterworks are constructed and in constant use. The time, labor, and money of the company have been expended for the purpose of supplying water to the city and its inhabitants." Also in the case of Davenport Gas & Electric Co. v. City of Davenport, 124 Iowa, 22, 98 N. W. 892, the portion of the ordinance was not declared invalid until after the company, relying upon the grant in the ordinance, had expended large sums of money. In all of the cases sustaining the rule contended for by respondent which we have been able to find, the same situation existed; i. e., the company receiving the grant had expended money prior to the declaration of the partial illegality. Where this condition exists, it might well be argued that an interested party should not be permitted to stand by and allow the expenditure of money under certain provisions of an ordinance, then later be allowed to say that, because some other provision of the ordinance is illegal, the provision under which the money was expended must also fall. But as was pointed out by the Utah court in the case of Brummitt v. Ogden Waterworks Co., supra, "It may well be that an attempt to execute a contract before its execution is entered upon, or even an attempt to enter into a contract which in part only is illegal or ultra vires would, in a proper proceeding, be enjoined as an entirety. In such a case there is no part performance to be considered, and the parties may easily enter into a contract by which all objectionable parts are avoided." In the case now under consideration there has been no partial performance. The entire plan to make operative and effective Ordinance No. 350 is unexecuted; no money has been expended under the franchise granted by the ordinance. There is no part performance which would be disturbed by allowing the voters of Rapid City to vote upon the question with the objectionable parts omitted.

In Cooley's Constitutional Limitations (5th Ed.) p. 212, there is the following with reference to acts passed by the Legislature, which acts are subsequently determined in part unconstitutional, "if when the unconstitutional part is stricken out that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained. The

difficulty is in determining whether the good and bad parts of the statute are capable of being separated within the meaning of this rule. If a statute attempts to accomplish two or more objects, and is void as to one, it still may be in every respect complete and valid as to the other. But if its purpose is to accomplish a single object only, and some of its provisions are void, the whole must fail unless sufficient remains to effect the object without the aid of the invalid portion. And if they are mutually connected and dependent on each other, as conditions, considerations, or compensations for each other, as to warrant the belief that the legislature intended them as a whole, and if all could not be carried into effect the legislature would not pass the residue independently, then if some parts are unconstitutional, all of the conditions which are thus dependent, conditional, or connected must fall with them." As stated by the author of the text, the difficulty is in applying this rule. But, in attempting to apply the rule to the facts before us, it seems to us that the principal question we should ask is, Would the voters of Rapid City have granted the franchise and voted favorably to the other provisions of the ordinance were it not for the irrevocable schedule of rates found by the trial court to exist in subdivision C of the ordinance? In order to sustain the remaining parts of the ordinance, we must be able to say that the ordinance would have received a favorable vote with the objectionable parts omitted. This conclusion, under the facts presented, we do not believe would be justified. The ordinance carried by a bare majority of 66 votes out of 2,753 votes cast. We conclude that the election was quite ardently contested, and that arguments pro and con were advanced during the days prior to the election. A very effective argument in favor of the ordinance would be the fixation of the irrevocable rate found by the trial court to exist in subdivision C. But, whether advanced as an argument in the campaign or not, certainly we cannot say that this feature did not influence the vote. To be assured that for twenty years the rates fixed in subdivision C would be irrevocable, except that these rates could be lowered as therein provided, would appeal to the "pocketbook" of the voter. In this day and age, we know of no more vital spot that could be reached by any appeal. In this connection it should also be noted that the trial court found as a fact the rates being paid for electricity in Rapid City at the present

time, and these rates were materially higher than those proposed in subdivision C. But, the respondent says, everyone is presumed to know the law, and therefore it follows that the voters knew that the attempted fixation of an irrevocable rate in subdivision C was illegal. That such presumption has no application here is too apparent to need any extended discussion. Certainly, when a matter is submitted to the serious consideration of an election, the voter may rely upon its legality until determined otherwise. We believe that there is considerable merit in the position taken by the Louisiana court in the case of Gretna v. Bailey, 141 La. 625, 75 So. 491, 498, Ann. Cas. 1918E, 573, wherein that court said:

"There is no assurance that the Legislature intended that the provisions of the Act No. 2 of 1916 which appear to be constitutional and valid should exist independent of those provisions of the act which we must declare are unconstitutional and invalid. Much less certain would be a presumption that a majority of the electors of the City of Gretna who voted in the special election held on the 19th of September, 1916, would have voted for the adoption of the provisions of the statute that are constitutional and valid, independently of those provisions which we must desclare unconstitutional and invalid. In fact, it is doubtful whether the doctrine that a statute may, under certain circumstances, be upheld as constitutional in part and be declared unconstitutional and invalid in other respects, has any application to a referendum statute."

But, conceding that a statute or ordinance, after it has been submitted to a vote of the people, under certain circumstances may be declared valid in part and invalid in part, we are of the opinion that under the facts here presented, as pointed out above, the declaration of invalidity with respect to subdivision C invalidates the ordinance in its entirety.

The case of State ex rel. Huston v. Commissioners of Perry County, 5 Ohio St. 497, is in many respects similar to the case at bar. The Ohio court in that case said, in speaking of the effect of declaring a law invalid in part: "Nor can it fall alone. For, as a general rule, one part of an act will not be held constitutional, and another part unconstitutional, unless the respective parts are independent of each other. The provisions of the fifth section are such as would naturally influence the vote upon the adoption or rejection of the first and main section, and it would be a fraud

upon the electors of Perry county, to procure their adoption of the first section, by means of the threatened penalties of the fifth, and then declare the fifth section void, but allow it to accomplish its purpose, by giving vitality and effect to the first, which, without it, would never have been adopted. The provisions of both sections are made equally to depend upon the result of the election; they were submitted by the legislature collectively, to the voters, and could only be passed upon as a whole; and we think they must, therefore, stand or fall together. Such is the doctrine of the case already cited, in which Chief Justice Shaw, after conceding that 'the same act of legislation may be unconstitutional in some of its provisions, and yet constitutional in others,' adds: 'But this must be taken with this limitation, that the part so held respectively constitutional and unconstitutional, must be wholly independent of each other. But if they are so mutually connected with, and dependent on each other, as conditions, considerations, or compensations for each other, as to warrant a belief that the legislature intended them as a whole, and if all could not be carried into effect, the legislature would not pass the residue independently, and some parts are unconstitutional, all the provisions which are thus dependent, conditional or connected, must fall with them.' "

█ There is but one question remaining, that is, whether the plaintiff may maintain this suit. The respondents contend that there is no showing that the plaintiff will suffer damage or injury by reason of the acts sought to be enjoined, and he is therefore in no position to complain. Were it not for the provisions of section 6163, Rev. Code 1919, there would be considerable merit to this contention of the respondent, but, because of this section of our Code, we are of the opinion that the objection of the respondent cannot be sustained.

Section 6163, Rev. Code 1919, is as follows: "Any citizen and taxpayer residing within any municipality may maintain an action or proceeding to prevent, by injunction, mandamus, prohibition, certiorari or other proper remedy, any violation of any provision of this part."

"This part" referred to in this statute is part 8 of title 6, Rev. Code 1919 (sections 6154-6580), which covers the entire subject of municipal corporations as that subject is treated in the Code. There can be no reasonable contention, and there is no contention,

that the attempted execution of an invalid ordinance by a governing body of a municipality is not violative of part 8, title 6, Rev. Code 1919. The statute gives the right to maintain the action to any citizen and taxpayer residing in the municipality. There is no question but that the plaintiff is a citizen and taxpayer of Rapid City residing in the city. The statute is express. There is no requirement that the citizen and taxpayer show any damage. It is sufficient if the requirements of the statute are met. With reference to section 6163, this court said, in the case of Cralle v. American-News Co., 51 S. D. 176, 212 N. W. 913: "Such suits protect taxpayers' rights (such as the right to have officers act lawfully and to refrain from acting unlawfully), and the remedies provided may be granted to the taxpayer as such, and not to the corporation."

We appreciate that this holding is opposed to the rule announced in many of the cases. But in no instance have we been referred to a case construing a statute similar to ours, and, as pointed out in McQuillin, Municipal Corporations (2d Ed.) § 2741, the question, to a great extent, has been the subject of statutory regulation. It is our opinion that the South Dakota statute is subject to no other reasonable construction than that, to maintain this action, the plaintiff must show only that he is a citizen and taxpayer of Rapid City and resides therein. Whether this holding will throw open the door to "intermeddlers seeking to control municipal affairs," as claimed by respondent, or make of every citizen a "watch-dog of the treasury," as claimed by appellant, is of legislative and not of judicial concern.

In view of the fact that the Legislature of 1931 passed chapter 194, Session Laws 1931, which purports to provide a method for financing utilities by municipal corporations without incurring a general obligation of the municipality, we refrain from discussing the other errors assigned.

The judgment is reversed; and the trial court directed to enter judgment granting the relief prayed for in plaintiff's complaint, with the exception of that part of the prayer seeking to enjoin the canvass of the vote.

POLLEY, P. J., and CAMPBELL, ROBERTS, and WARREN, JJ., concur.