## DANFORTH, Respondent, v. CITY OF YANKTON, et al, Appellants

### (25 N. W.2d 50)

(File No. 8898. Opinion filed November 18, 1946.)

Rehearing Denied November 23, 1946.

**John E. Walsh,** of Yankton, for plaintiff and Respondent.
**W. W. French, H. A. Doyle** and **Frank Biegelmeier,** all of Yankton, for Defendants and Appellants.

ROBERTS, J. This action was instituted by Charles Irving Danforth under the Declaratory Judgment Act (SDC 37.01) against the City of Yankton, the mayor, auditor, treasurer and the commissioners of the city for the purpose of determining the validity and effect of the provisions of Chapter 118, Laws 1945. There was a trial on the merits in the circuit court of Yankton county which resulted in a judgment in favor of the plaintiff and from such judgment defendants have appealed.

The statute referred to is entitled "An Act to Authorize the Governing Bodies of Certain Public Corporations, To Purchase, Acquire, Maintain and Operate Interstate Toll Bridge Across Streams and Rivers; to Issue Bonds Therefore, Payable Only From the Revenues of Such Toll Bridges Without Liability Against Such Public Corporations: To Create a Bridge Commission: To Prescribe the Duties and Powers

of the Governing Bodies of Such Public Corporations and of such Bridge Commisison and to Make the Provisions of Sections SDC 45.2404 to SDC 45.2418 Both Inclusive, Applicable Thereto."

Under the provisions of this enactment, Ch. 118, Laws 1945, § 2, every municipality or county in the state is "authorized and empowered to purchase or otherwise acquire, equip, maintain, operate and improve any interstate toll bridge within * * * the corporate or territorial limits of such municipality or county or within five miles thereof, whether the same be all within or partly within and partly without this state." For the purpose of defraying the cost of purchasing such a bridge the act provides, Ch. 118, Laws 1945, § 3, that "every municipality or county may borrow money and issue negotiable bonds without pledging or using the credit of such municipality or county; provided no such money shall be borrowed and no such bonds shall be issued until authorized by an ordinance of such municipality, duly adopted, or resolution of the board of commissioners of such county * * * nor until such ordinance or resolution has been submitted to the voters of such municipality or county at a regular or special election and sixty per cent of the electors voting thereon have voted in favor of such ordinance or resolution." It is further provided in Section 3 of the act that "Such ordinance or such resolution shall provide that the proposed toll bridge is to be acquired pursuant to the provisions of this chapter; it shall further describe or specify the value or agreed price for the purchase or acquisition of such toll bridge as agreed to between the owner or owners thereof and the governing board of such municipality or board of commissioners of such county, and the governing board may agree with the owner or owners of such toll bridge as to the value thereof and purchase the same at such agreed price or value, and said governing board is hereby authorized to negotiate for the purchase or acquisition of such toll bridge and procure an option thereon and shall have power to negotiate with, and for a nominal consideration procure, an option for the purchase of such bridge."

The provisions of SDC 45.24, authorizing municipal corporations to acquire and maintain light, heat and power systems and water works systems and to issue bonds therefor payable from the revenues of such utilities, are made applicable to the purchase and operation of bridges acquired under the act, Ch. 118, Laws 1945, § 4, and as to the exercise of powers therein vested it is provided, Ch. 118, Laws 1945, §§ 5, 6: "The governing board of any such municipality or county may at any time prior to acquisition of title to any such bridge, or thereafter by resolution, provide for and create a bridge commission * * * and after its creation said bridge commission shall be vested with all the powers, rights and duties and shall be governed by the procedure set forth" in SDC 45.24, so far as applicable.

An understanding of the questions sought to be presented requires a recital of the allegations of the complaint. The interest of the plaintff in the relief he seeks is alleged in the first paragraph of the complaint: "Plaintiff is now, and at all times hereinafter mentioned was, an elector, freeholder, and taxpayer of the City of Yankton, County of Yankton, and State of South Dakota; and the Plaintiff is now and will continue to be a user and toll payer of the bridge hereinafter indentified."

It is further alleged that the construction of a bridge was completed in 1924 by the Meridian Highway Bridge Company, a South Dakota corporation, extending from a point in the city of Yankton across the Missouri river to a point in Cedar county, Nebraska, where the bridge joins the state highway system of Nebraska; that such bridge company has given an option to purchase its structure to the Kirkpatrick-Pettis Company, which in turn has agreed to sell the bridge to the city of Yankton and accept in payment toll bridge revenue bonds in the sum of $700,000; that the board of commissioners of the city of Yankton enacted an ordinance authorizing and providing for the issuance of toll bridge revenue bonds in the above amount for the purchase of the bridge; that the ordinance was submitted to the voters of the city of Yankton at a special election and was approved by a vote of more than sixty per cent of the electors voting

thereon; that the city commission of the city of Yankton adopted a resolution reciting that the commission would not proceed either with the purchase of the bridge or the issuance of revenue bonds until it shall have been adjudicated that the act of 1945, and the proceedings of the city commissioners thereunder are valid and that the proposed revenue bonds will not constitute a general obligation of the city. The complaint asks declaratory relief as follows: (1) that Chapter 118, Laws 1945, is constitutional; (2) that the title of the Act does not embrace more than one subject; (3) that the proposed revenue bonds would be exempt from taxation; (4) that the provisions of the act vesting the governing body of a municipality with authority to appoint a bridge commission are valid; (5) that the enactment of the provisions of SDC 45.24, so far as they may be applicable, by reference is valid; (6) that a bridge acquired under the act would come within the term "utility" as defined by SDC 45.2401; (7) that the issuance of revenue bonds under this act would not create a debt within the meaning of any constitutional or statutory limitation and particularly Section 4, Article 13 of the Constitution of this state; (8) and that the court grant such other relief as may be lawful and proper in the premises.

An answer was filed admitting that defendants did not intend to proceed further with the purchase of the bridge and issuance of the bonds until the validity of the statute and the other matters involved are determined and praying that the court by its decree determined the validity of the statute and declare "the rights, status and other legal relations of the city of Yankton and its defendant officers growing out of and in connection with the agreement with Kirkpatrick-Pettis Company and Ordinance No. 92."

The cause was heard on the pleadings and a stipulation of the facts and the court rendered a decree granting the relief sought.

■ Notwithstanding the favorable adjudication of the trial court, the city and the other defendants named have appealed and assert that there exists an uncertainty as to the questions adjudicated and seek to obtain a review of the

judgment. As a general rule, an appellant must not only have an interest in the subject matter in controversy, but must also be prejudiced or aggrieved by the decision from which he appeals. It would appear that the judgment could not have been more favorable to the appellants and that this court is asked to confirm what was adjudicated below.

█ The case was submitted upon the asumption that there existed a controversy properly determinable under the Declaratory Judgment Law. If there was an absence of jurisdiction in the trial court to consider the questions presented, the declarations are advisory only and would not be res adjudicata. We must determine at the outset whether the facts and conditions warranted the rendering of a declaratory judgment.

██ A proceeding for a declaratory judgment must be based on a justiciable controversy between parties having adverse interests in the matter with respect to which the declaration is sought. Security State Bank v. Breen, 65 S. D. 640, 277 N. W. 497; State of North Dakota v. Perkins County, 69 S. D. 270, 9 N. W.2d 500. The court in State v. Dammann, 220 Wis. 17, 264 N. W. 627, 629, 103 A. L. R. 1089, summarizes the jurisdictional requisites as follows: "(1) There must exist a justiciable controversy; that is to say, a controversy in which a claim of right is asserted against one who has an interest in contesting it; (2) the controversy must be between persons whose interests are adverse; (3) the party seeking declaratory relief must have a legal interest in the controversy, that is to say, a legally protectible interest; and (4) the issue involved in the controversy must be ripe for judicial determination."

In Borchard on Declaratory Judgments, page 29, the author in discussing the requisites of a suit for declaratory judgment says: "It has already been observed that an action for a declaratory judgment must exhibit all the usual conditions of an ordinary action, except that accomplished physical injury need not necesarily be alleged. It is sufficient if a dispute or controversy as to legal rights is shown, which, in the court's opinion, requires judicial determination—that is, in which the court is convinced that by adju-

dication a useful purpose will be served. The requisites of justiciability must be present. Not only must the plaintiff prove his tangible interest in obtaining a judgment, but the action must be adversary in character, that is, there must be a controversy between the plaintiff and a defendant, subject to the court's jurisdiction, having an interest in opposing his claim. Unless the parties have such conflicting interests, the case is likely to be characterized as one for an advisory opinion, and the controversy as academic, a mere difference of opinion or disagreement not involving their legal relations, and hence not justiciable."

■ Declaratory relief, as thus observed, will be granted only where the plaintiff has an adverse and a legally protectible interest in the subject matter concerning which a declaration is sought. State v. Perkins County, supra; State v. Dammann, supra; McCarthy v. Hoan, 221 Wis. 344, 266 N. W. 916; Heisey v. Port of Tacoma, 4 Wash. 2d 76, 102 P.2d 258; Perry v. City of Elizabethton, 160 Tenn. 102, 22 S. W.2d 359; County Board of Education v. Borgen, 192 Minn. 512, 257 N. W. 92; Seiz v. Citizens Pure Ice Co., 207 Minn. 277, 290 N. W. 802.

■ Whatever right plaintiff has to a declaratory judgment is based upon his right as a taxpayer or as a citizen of the municipality and user of the bridge in question to bring about public action. It may be admitted that a resident taxpayer has a sufficient interest under the Declaratory Judgment Law to test the constitutionality of a statute under which taxing authorities will proceed to levy taxes or make expenditures of public money. The city commission asserts that it will not proceed with the purchase of the bridge until the validity of the ordinance and other questions have been adjudicated. The action of the commission will in no way increase the burden of taxation upon property within the municipality. This being true, plaintiff cannot possibly be affected as a taxpayer.

■ Rights to be determined by a declaratory judgment are not usually those in praesenti, but are rights which will accrue at some future time. It is plain to us that remedial rights, if any, have accrued and if plaintiff as a private

citizen has no right by mandamus or other remedial writ to compel defendants to discharge what is alleged to be an official duty, the necessity for such right cannot be avoided by proceeding under the Declaratory Judgment Law. The statute (SDC 37.4501) provides for the issuance of a writ of mandamus "to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station." This relates to the performance of a ministerial duty and not to a duty or power involving the exercise of discretion. Where the relief sought is the enforcement of a duty within the intention of such statute, an elector, citizen or taxpayer regardless of any special or peculiar interest apart from that common to the public may apply for and obtain a writ of mandamus to enforce the performance of such duty. State v. Lien, 9 S. D. 297, 68 N. W. 748; State v. Menzie, 17 S. D. 535, 97 N. W. 745. There are decisions in this jurisdiction to the effect that a taxpayer or elector having no special interest may institute an action to protect a public interest. White Eagle Oil & Refining Co. v. Gunderson, 48 S. D. 608, 205 N. W. 614, 43 A. L. R. 397; Weatherer et al. v. Herron et al., 25 S. D. 208, 126 N. W. 244; Haines v. Rapid City, 59 S. D. 58, 238 N. W. 145; State v. Dolan, 61 S. D. 530, 249 N. W. 923. These actions were for preventive relief. The present action is not founded upon an official act, the performance of which will be wrongful or illegal.

 The statute, Ch. 118, Laws 1945, § 2, provides that every municipality or county in this state is "authorized and empowered to purchase or otherwise acquire, equip, maintain, operate and improve any interstate toll bridge," etc. These provisions purport to confer power and not to impose a duty upon a municipality or county. It does not appear that the city has exercised such authority obliging itself to purchase the bridge. The Meridian Highway Bridge Company granted an option to purchase its property within a specified time and the holder of the option and the city have agreed upon the price and the terms upon which the bridge can be acquired. An ordinance described in its title as "authorizing and providing for the issuance of Toll Bridge Revenue Bonds of the city of Yankton, South Dakota, to the

amount of $700,000 for the purpose of acquiring the Meridian Highway Bridge across the Missouri River; setting forth the terms and conditions on which such bonds are to be and may be issued and outstanding and contain certain covenants and agreements to be performed by the city of Yankton; providing for the maintenance and operation of said bridge under municipal ownership and the payment of said bonds and interest thereupon from revenues pledged for that purpose; and specifying and limiting the rights of the holders of said bonds in the enforcement thereof" was submitted to the voters of the city and was approved. The governing body of the city of Yankton derives its authority to purchase under the statute and the action of the electors authorizing the issuance of bonds did not create a mandatory and imperative duty to purchase or otherwise acquire the bridge in question. No action will lie for mere failure or refusal to exercise such power.

 It has been held by this court that a discretionary act will be reviewed or controlled when such discretion has been abused or not exercised under established rules of law. State v. Richards, 61 S. D. 28, 245 N. W. 901; see also State ex rel. Berdahl v. Norstad, 64 S. D. 347, 266 N. W. 686. This is a well recognized exception to the general rule. 38 C. J. 598. Manifestly, that has reference to arbitrary refusal to perform a plain duty and not to the failure or refusal to exercise a power conferred upon municipal or other officials.

 We conclude that jurisdiction to render a declaratory judgment was not invoked. Litigants cannot by consent confer upon a person, who does not have a sufficient interest to entitle him to bring suit, the right to maintain suit or agree that a justiciable controversy exists so as to confer jurisdiction, when, in fact, it appears no such controversy is presented. When it is ascertained that no jurisdiction exists, we can go no further. No consideration of policy or convenience should induce a court to render a decision which would be merely advisory.

The judgment appealed from is reversed.

SMITH and SICKEL, JJ., concur.

RUDOLPH, P.J., dissents.

POLLEY, J., not sitting.

RUDOLPH, Presiding Judge (dissenting).

The facts disclose that the Kirkpatrick-Pettis Company entered into a written agreement with the city of Yankton to sell to the city the Yankton bridge for a stipulated price, and accept as payment therefor revenue bonds issued under the provisions of SDC 45.24 and Ch. 118, Laws of 1945. The city commission thereafter adopted Ordinance No. 92 authorizing and providing for the issuance of the bonds to pay for the bridge which also determined that the best interests of the city require that the bridge be purchased. This ordinance was duly submitted to the electors as required by law and was approved by more than 60% of the voters voting thereon. The commission now by resolution refuses to proceed solely because it questions the validity of the 1945 law and Ordinance No. 92.

It is my opinion that under the decisions of this court plaintiff has an interest as a taxpayer and elector which is sufficient upon which to predicate his right of action. State ex rel. Adkins v. Lien et al., 9 S. D. 297, 68 N. W. 748; State ex rel. Schilling v. Menzie et al., 17 S. D. 535, 97 N. W. 745; Weatherer et al. v. Herron et al., 25 S. D. 208, 126 N. W. 244; White Eagle Oil & Refining Co. v. Gunderson, 48 S. D. 608, 205 N. W. 614, 43 A.L.R. 397; Haines v. Rapid City et al., 59 S. D. 58, 238 N. W. 145; Security State Bank et al., v. Breen et al., 65 S. D. 640, 277 N. W. 497. It is my further opinion that a justiciable controversy appears. The reports are filled with cases wherein courts have passed upon the validity of bonds in declaratory proceedings. Whether the issue arises because officers propose to issue the bonds, or whether it arises because they refuse on the sole ground of the invalidity of the act which purports to give them the power would seem to make no difference in deciding the question of whether a controversy actually exists. Where, as in this case, the officers refuse to act only because they assert the invalidity of the law purporting to create the power, their refusal to act will be considered an abuse of discretion if they are guided by an erroneous view of the law. State ex rel. Cook v. Richards, 61 S. D. 28, 245 N. W.

901. Thus, we have on the one hand a citizen, elector, and taxpayer of the city who, under our decisions, has an interest which will support the bringing of an action relating to a public matter, on the other hand, the officers of the city, who, if the position of plaintiff is correct, are acting in an abuse of discretion, and without any basis in law. It, therefore, appears to me that a controversy just as real and just as justiciable is presented, as would have been presented had the city officers threatened to proceed and a citizen then sought to have rights declared in this type of proceeding.

A situation somewhat similar to that here presented arose in Kansas. The question there related to the power of the city to issue internal improvement bonds without reserving privilege of prepayment at the expiration of five years. An action for a declaratory judgment was brought on the relation of Enright against the city. Judge Rousseau Burch, speaking for the entire court, said in the case of State ex rel. Enright v. Kansas City, 110 Kan. 603, 204 P. 690, 691: "The proceedings in this case serve to illustrate operation of the declaratory judgment act. Execution of the city's internal improvement program placed it in this dilemma. If privilege of prepayment were not written in the bonds, the city and its officers were exposed to prosecution by the state for abuse of corporate power and violation of law, and the securities might not be marketable. If privilege of prepayment were written in the bonds, a heavy financial burden would be placed on the taxpayers, perhaps unnecessarily. Formerly, the city would have been compelled to choose one course or the other, and abide the consequences. The law officers of the state could not give a binding interpretation of the statute, and, because of its ambiguity, could not consent to the course which the city claimed it was authorized to pursue. Therefore a controversy existed, justifiable under the declaratory judgment act. * * * The city may now proceed with its improvements without any of the embarrassments and without any of the delay which would have been encountered if the remedy of declaration of right had not been available."

Without determining that the traditional concepts of a justiciable controversy were present in the Kansas case,

nevertheless, the court determined that a controversy within the meaning of the declaratory judgment act actually existed. It seems to me that the facts with which we are confronted embrace the traditional concepts of a controversy, and that this court should make a declaration upon the issues presented.