#30890-a-MES
**2025 S.D. 35**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

MICHELLE K. JENSEN,
MICHAEL J. HOFFMAN, JAY W.
WHITE, THOMAS M. EIESLAND, and
NOPE-LINCOLN COUNTY, INC., a
South Dakota non-profit corporation,   Plaintiffs and Appellants,

  v.

DEPARTMENT OF CORRECTIONS,
STATE OF SOUTH DAKOTA, and
KELLIE WASKO, Secretary,   Defendants and Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
LINCOLN COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JENNIFER MAMMENGA
Judge

\* \* \* \*

A.J. SWANSON
Canton, South Dakota   Attorney for plaintiffs and
   appellants.


MARTY J. JACKLEY
Attorney General

GRANT M. FLYNN
Assistant Attorney General
PAUL SWEDLUND
Solicitor General
Pierre, South Dakota   Attorneys for defendants and
   appellees.

\* \* \* \*

ARGUED
MARCH 25, 2025
OPINION FILED **07/09/25**

#30890

SALTER, Justice

[¶1.]      House Bill 1017 (HB 1017), enacted by the 2023 Legislature, authorized the Department of Corrections (DOC) to purchase property for a new men's state prison.  The DOC later selected two contiguous state-owned parcels in rural Lincoln County, currently zoned for agricultural use.  A group of private parties (the Appellants) commenced this action against the State of South Dakota, the DOC, and the DOC Secretary (collectively, the State), seeking declaratory and injunctive relief.  The State subsequently moved for dismissal based on various theories, including the argument that the Appellants lack standing to bring this action along with merits assertions that the State is immune from suit and that HB 1017 preempts local zoning rules.  The circuit court granted the State's motion, prompting this appeal by the Appellants.  We affirm on the basis that the controversy here is not justiciable because the Appellants lack the right to enforce local zoning regulations against the State in a declaratory judgment action.  We do not reach the merits of the State's sovereign immunity and preemption claims.

## Factual and Procedural Background

[¶2.]      Governor Kristi Noem signed HB 1017 into law on March 27, 2023. Relevant here, HB 1017 authorized the DOC to "purchase, on behalf of the State of South Dakota, real property for offenders committed to the [DOC]" and "contract for the planning and site preparation of a prison facility[.]"  2023 S.D. Sess. Laws ch. 195, §§ 1–2.

[¶3.]      Using this statutory authority, DOC Secretary Kellie Wasko selected two adjoining 160-acre parcels of state-owned land in rural Lincoln County as the

-1-

site for the new prison facility. The State, through the Office of School and Public Lands, originally obtained this land by escheat in 1992.[1] Following a formal appraisal, the DOC purchased the land from the Office of School and Public Lands for approximately $7,910,000.

[¶4.] Secretary Wasko announced the DOC's selected location on October 6, 2023. Concerned over the State's intended use and its site selection process, the Appellants, who include Mike Hoffman, Michelle Jensen, Jay White, and Tom Eiesland, as well as a non-profit corporation, NOPE-Lincoln County Inc. (NOPE), retained counsel and eventually commenced this declaratory judgment action. At the heart of their case, the Appellants seek a declaration that the State is subject to Lincoln County's 2009 Revised Zoning Ordinance (the Zoning Ordinance).

[¶5.] The Appellants note, in this regard, that the property selected by the DOC is located in an "A-1 Agricultural District" under the Zoning Ordinance, and a prison would not be considered a permissible use. For a nonconforming use of this nature, the Zoning Ordinance typically requires either a conditional use permit (CUP) or a rezoning request, both of which provide for public notice and an opportunity for public comment—something the Appellants allege to be due process rights that they will be denied if the State is not subject to local zoning regulations.

---

1. Escheat describes the process by which a person's property passes to "the state of South Dakota for the support of the common schools" in cases where an "an heir, devisee, or claimant cannot be found[.]" *In re Est. of Jetter*, 1997 S.D. 125, ¶ 17, 570 N.W.2d 26, 30 (quoting SDCL 29A-3-914); *see also* S.D. Const. art. VIII, § 2 (creating a permanent trust fund "for the maintenance of public schools" funded, in part, by "all property that shall fall to the state by escheat").

[¶6.]     Styled as a declaratory judgment action, the Appellants' complaint advances their due process theory using its claim that the State is subject to the Zoning Ordinance as a predicate.  As to why the Appellants, and not Lincoln County, were seeking to enforce the Zoning Ordinance, the complaint stated:

> Lincoln County itself seems legally inhibited to maintain an action against the State and its agencies . . . . *Plaintiffs are not similarly constrained.*

(Emphasis added.)[2]

[¶7.]     In an *amicus curiae* filing before the circuit court, Lincoln County stated that it does, indeed, believe itself unable to enforce its Zoning Ordinance against the State.  At oral argument, the Appellants seemed to suggest that Lincoln County was also unwilling to enforce the Zoning Ordinance.  Regardless, the only logical inference from this aspect of the Appellants' complaint is that they believe that they not only possess a private right of action to enforce the Zoning Ordinance, but also that they may do so exclusive of Lincoln County.[3]

---

2.     For its statement that Lincoln County was unable to bring an action against the State, the Appellants cited two of our decisions: (1) *Pennington County v. State ex rel. Unified Judicial System*, 2002 S.D. 31, 641 N.W.2d 127, which expressed the general rule that counties cannot sue the state sovereign that created them; and (2) *Dan Nelson Automotive, Inc. v. Viken*, 2005 S.D. 109, 706 N.W.2d 239, which allowed declaratory judgment actions against state officials to obtain a judicial interpretation of statutes.

3.     In addition to their request for declaratory relief, the Appellants also sought "a permanent injunction directing the State make no use . . . [of the selected site] except in a manner that is wholly consistent with [the Zoning Ordinance]."

[¶8.] However, the Appellants' complaint confirms that each of them is a private individual or, in the case of NOPE, a private corporation.[4] At no point in the complaint or at any other stage of the litigation, including this appeal, have the Appellants identified their authority for what is plainly a private zoning enforcement action against the State.

[¶9.] The Appellants also used their complaint to present something of a preemptive legal argument on the general topic of whether the State is subject to county zoning regulations. Prior to commencement of the present action, counsel for Appellants wrote to Secretary Wasko, inquiring as to the DOC's position on whether zoning or land use laws applied to state-owned property. Featured prominently in the Secretary's brief response was a 1977 Attorney General opinion noting "the general rule that zoning regulations . . . do not apply [to the State] absent a clear manifestation of legislative intent[.]" 1977 S.D. Op. Att'y Gen 13. The Attorney General opined that the State "has not manifested an intent to

---

4. Mike Hoffman and Michelle Jensen are a married couple whose real property abuts the proposed prison site, and they alleged that "the fair market value of [their] properties ha[s] fallen [due to] the State's Announcement." Jay White "own[s] about 200 acres . . . one mile due west of the [selected site]" and estimated its value "prior to the State's Announcement" though not after. Tom Eiesland also owns land near the selected site and stated he "desires to retain his property interests in this area . . . as farmlands, consistently with the County's [Zoning Ordinance], without further development pressure arising from the location of a new prison in this rural area." The complaint describes NOPE as "a nonprofit South Dakota membership corporation . . . [with] hundreds of members, largely composed of individuals residing in . . . Lincoln County, as well as a number of farming entities[.]" NOPE and its members "all seek[] to preserve a way of rural life in the A-1 Agricultural District, consistent with [the Zoning Ordinance]."

diminish the doctrine of immunity[,]" and as a result, the State would be immune to "suit[s] to enforce zoning against said property[.]" *Id.*

[¶10.] The Appellants' complaint juxtaposes the Attorney General's opinion, which they deem to be the sole authority for the State's present assertion of immunity, with our decision in *Lincoln County v. Johnson,* 257 N.W.2d 453 (S.D. 1977). Issued shortly after the Attorney General's opinion, *Lincoln County* involved the City of Sioux Falls' attempt to locate a landfill in Lincoln County. Amid the competing local government interests, we applied a "balancing of interests" rule to make an ad hoc determination as to whether a municipal governmental entity should be subject to a county's zoning laws.

[¶11.] Therefore, as an alternative to simply declaring the State subject to the Zoning Ordinance, the Appellants requested a "balancing of interests" determination following an adversarial evidentiary hearing. According to the Appellants, the State would bear the burden to show that the prison site selection was made "in a non-arbitrary, non-capricious, and entirely reasonable manner."

[¶12.] Prior to submitting an answer, the State moved for dismissal under SDCL 15-6-12(b)(5). The State argued that the Appellants' lack of standing, sovereign immunity, and preemption preclude Appellants from stating a claim upon which relief can be granted.

[¶13.] In response, the Appellants asserted that landowners may challenge nearby land uses in violation of zoning ordinances under a traditional injury-in-fact standing analysis. The Appellants further noted that HB 1017 is silent about zoning which, in their view, meant that the Secretary could not rely upon sovereign

immunity because she was "not acting entirely within the scope of her legislative authority" and was, instead, acting "either oblivious to or in complete derogation of [the Zoning Ordinance]."

[¶14.] The Appellants also used HB 1017's silence on the subject of local zoning to justify an argument to extend the "balancing of interests" rule as set forth in *Lincoln County*. They contended that "their property and personal interests as citizens are entitled to more substantive notice than a mere, abrupt Announcement [of the prison site] . . . [and] are likewise entitled to some meaningful, adversarial hearing in challenging the arrogation of power now being claimed by or on behalf of the Secretary."[5]

[¶15.] The circuit court issued a memorandum decision and order granting the State's motion to dismiss. However, the Appellants prevailed, in part, on the issue of traditional standing. The court found that "on the face of the Complaint only [Appellants] Jensen and Hoffman have alleged an injury in fact to the value of their properties." The court then summarily concluded that a favorable decision would provide redressability for the Appellants' claims as part of a determination that Jensen and Hoffman "have standing to bring their claims."[6] But the court held

---

5. Lincoln County's *amicus* brief to the circuit court was generally supportive of the Appellants' positions. For instance, Lincoln County argued that the State exceeded its authority by either failing to comply with the Zoning Ordinance or failing to submit to a balancing of interests and that sovereign immunity did not bar the Appellants' claim. Moreover, Lincoln County noted that its Zoning Ordinance does not forbid construction of a prison, so preemption does not apply.

6. The circuit court's redressability determination rested uneasily on its conclusion that "if DOC is prevented [by a judicial decision] from building the

(continued . . .)

that the other individual Appellants and NOPE did not have standing, citing a failure to allege any particular and non-speculative injury in fact.

[¶16.]     As to the merits of Jensen and Hoffman's private zoning enforcement claims, the circuit court granted the State's motion to dismiss based on sovereign immunity and, in the alternative, preemption.  The former was based upon the court's determination that "[t]he duties conferred upon Secretary Wasko by HB 1017 were discretionary and properly delegated[.]"  And the latter, alternative preemption determination was based upon the court's conclusion that the "general rule" of state law preeminence applied "when a state agency's building plan . . . conflict[ed] with local or county zoning laws."

[¶17.]     The Appellants have appealed, challenging the circuit court's decision on various grounds which we consolidate into three.  First, the Appellants assert the circuit court erred when it determined that Appellants White, Eiesland, and NOPE all lacked standing.  Second, the Appellants assign error to the court's sovereign immunity analysis, specifically, its determination that the Secretary's duties were discretionary and are not subject to declaratory relief.  In the Appellants' view, the correct inquiry should be focused on what it believes to be the State's ministerial duty to comply with the Zoning Ordinance.  Lastly, Appellants

_____

(. . . continued)

state prison in the intended location there will be no injury to their property[.]"  But this reflects an inaccurate view of the litigation.  The Appellants' principal claim is not that the State categorically cannot build the prison in Lincoln County; the complaint alleges the State's effort to build the prison should be subject to the Zoning Ordinance so that the Appellants could then participate in an effort by the State to seek a CUP or a zoning change.  Given our disposition below, however, it is unnecessary to consider redressability further.

claim the court erred in failing to extend the "balance of interests" test in its preemption analysis.

[¶18.] Given the parties' arguments regarding standing and the Appellants' unilateral effort to enforce the Zoning Ordinance through a declaratory judgment action without Lincoln County's participation, we issued a letter to the parties prior to oral argument asking them to "please be prepared to discuss whether the Appellants have a private right of action to enforce the Lincoln County Revised Zoning Ordinance based upon a statute or other legal authority."

## Analysis and Decision

[¶19.] Because this appeal arises from a motion to dismiss, we "accept[] the facts alleged in the complaint as true and construe[] them in the light most favorable to the pleader." *Paul v. Bathurst*, 2023 S.D. 56, ¶ 2, 997 N.W.2d 644, 647 (citing *Sisney v. Best Inc.*, 2008 S.D. 70, ¶ 8, 754 N.W.2d 804, 809). "Further, '[a] motion to dismiss tests the legal sufficiency of the pleadings, and therefore, we review the circuit court's decision on the motion de novo.'" *Sierra Club v. Clay Cnty. Bd. of Adjustment*, 2021 S.D. 28, ¶ 10, 959 N.W.2d 615, 620 (alteration in original) (quoting *Gruhlke v. Sioux Empire Fed. Credit Union, Inc.*, 2008 S.D. 89, ¶ 17, 756 N.W.2d 399, 408).

[¶20.] Considering the relief the Appellants seek and their collective private, non-public status, we think it is helpful to begin by setting this case within the legal context of the established principles governing declaratory judgment actions.

***Relief under the Declaratory Judgments Act and justiciability***

[¶21.]     South Dakota's codification of the Uniform Declaratory Judgments Act states that "[c]ourts . . . shall have power to declare rights, status, and other legal relations[.]" SDCL 21-24-1.  In general terms, we have recognized that the Declaratory Judgments Act "should be construed liberally, 'particularly . . . when the construction of statutes dealing with zoning . . . presents matters involving the public interest in which timely relief is desirable.'" *Abata v. Pennington Cnty. Bd. of Comm'rs*, 2019 S.D. 39, ¶ 11, 931 N.W.2d 714, 719) (quoting *Kneip v. Herseth*, 87 S.D. 642, 648, 214 N.W.2d 93, 97 (1974)); *see* SDCL 21-24-14 ("This chapter . . . is to be liberally construed and administered."); SDCL 21-24-6 ("The enumeration in [SDCL] 21-24-3 . . . does not limit or restrict the exercise of the general powers conferred in § 21-24-1, in any proceeding where declaratory relief is sought, in which a judgment or decree will terminate the controversy or remove an uncertainty.").

[¶22.]     But this is not to say that the Declaratory Judgments Act authorizes all requests for declaratory relief brought by any type of plaintiff.  We have traditionally looked to the four requirements for a cognizable declaratory judgment action originally set out in *Danforth v. City of Yankton*, 71 S.D. 406, 412, 25 N.W.2d 50, 53 (1946):

> (1) *There must exist a justiciable controversy; that is to say, a controversy in which a claim of right* is asserted against one who has an interest in contesting it; (2) the controversy must be between persons whose interests are adverse; (3) the party seeking declaratory relief must have a legal interest in the controversy, that is to say, a legally protectible interest; and (4) the issue involved in the controversy must be ripe for judicial determination.

*Boever v. Bd. of Acct.*, 526 N.W.2d 747, 749–50 (S.D. 1995) (emphasis added) (quoting *Danforth*, 71 S.D. at 412, 25 N.W.2d at 53).[7]

[¶23.]    Here, the circuit court and the parties addressed justiciability only through the lens of traditional standing, focusing primarily on the Appellants' asserted injuries. While this type of standing is included among broader justiciability principles, it does not end the justiciability inquiry in declaratory judgment actions. For these cases, *Danforth* describes a justiciable controversy as one "in which a claim of right is asserted against one who has an interest in contesting it." 71 S.D. at 412, 25 N.W.2d at 53. In fact, neither the parties nor the court cited *Danforth* or the subsequent cases applying it, leaving intact the inescapable premise pervading this case that the Appellants have a private and justiciable claim of right to enforce the Zoning Ordinance against the State.

[¶24.]    On its face, however, this premise appears unsound, and we feel compelled to address it. *See Broad Reach Power, LLC v. Montana Dep't of Pub. Serv. Regul., Pub. Serv. Comm'n*, 520 P.3d 301, 304 (Mont. 2022) ("Justiciability is a threshold issue—without it, this Court cannot adjudicate a dispute. This Court may raise questions of justiciability sua sponte because we lack jurisdiction over non-justiciable matters." (cleaned up)). And practically speaking, we believe that

---

7.    We have described these requirements as "jurisdictional" though there is no question that circuit courts possess the requisite subject matter jurisdiction to hear and decide the class of cases represented by declaratory judgment actions under the provisions of SDCL chapter 21-24. The *Danforth* requirements may be more accurately described simply as requirements necessary to state a claim for declaratory relief which is, of course, a predicate to a court exercising jurisdiction in individual cases.

not addressing the threshold issue of justiciability now would be viewed as tacit approval of the Appellants' asserted private right of enforcement against the State, creating uncertainty in the law and, very likely, the necessity for future litigation to clarify the requirements for declaratory judgment actions.

### *A justiciable claim of right*

[¶25.] In order to establish a justiciable claim for declaratory relief, the Appellants must have a claim of right in the relief sought. That is, they must establish support for their assertion that they can enforce the Zoning Ordinance. At oral argument, counsel for the Appellants acknowledged he was not able to do so. It seems as though the Appellants have relied upon the Declaratory Judgments Act, itself, to provide a basis for their ostensible right to enforce the Zoning Ordinance. This, however, is unsustainable, but to understand why, it is necessary to first acknowledge that the Declaratory Judgments Act does not, itself, confer substantive rights upon plaintiffs.

[¶26.] We have recognized as much in our tax refund decisions where we have held that the remedy of declaratory relief alone cannot provide the basis for seeking a tax refund. For instance, in *Metropolitan Life Insurance Co. v. Kinsman*, 2009 S.D. 53, 768 N.W.2d 540, we concluded that an insurance carrier was using a declaratory judgment action to effectively seek a refund of taxes it had paid. However, the insurance carrier had not complied with "the exclusive methods for receiving a refund[,]" and we held that it could not augment these methods through the simple expedient of a declaratory judgment action. *Id.* ¶ 19, 768 N.W.2d at 545–46; *see also Agar Sch. Dist. No. 58-1 Bd. of Educ., Agar, S.D. v. McGee*, 527 N.W.2d

282, 289 (S.D. 1995) (Wuest, J., concurring in part and dissenting in part) ("A declaratory judgment statute does not create or change any substantive rights, however, and will not be permitted to circumvent the legislative purpose of other statutes." (citing 26 C.J.S. Declaratory Judgments §§ 7 and 9 (1956))).[8]

[¶27.] The Virginia Supreme Court has expressed a similar view:

> The intent of the declaratory judgment statutes is not to give parties greater rights than those which they previously possessed, but to permit the declaration of those rights before they mature. The declaratory judgment acts do not create or change any substantive rights, or bring any other additional rights into being.

*Cherrie v. Virginia Health Servs., Inc.*, 787 S.E.2d 855, 859 (Va. 2016) (internal citations and quotations omitted); *see also Danforth*, 71 S.D. at 413–14, 25 N.W.2d at 54 (holding that where a private citizen plaintiff lacked the right to compel governmental action "the necessity for such right cannot be avoided by proceeding under the Declaratory Judgment Law").

[¶28.] Other courts across the country agree. *See e.g.*, *Lowell v. Hayes*, 117 P.3d 745, 757 (Alaska 2005) ("Declaratory judgments vindicate substantive rights—they do not create them."); *Sommer v. Misty Valley, LLC*, 511 P.3d 833, 840–41 (Idaho 2021) (same); *Beahringer v. Page*, 789 N.E.2d 1216, 1223–24 (Ill. 2003)

---

8. The basis of Justice Wuest's partial dissent in *Agar School District* was his view that the majority had suggested a declaratory judgment action was a separate substantive means by which a taxpayer could seek a refund. The majority's position was based upon our decision in *Arneson v. Baker*, 76 S.D. 262, 77 N.W.2d 325 (1956), but we later recognized that the portion of *Arneson* treating a declaratory judgment action as creating a new right had been overruled by our decision in *Lick v. Dahl*, 285 N.W.2d 594, 599 (S.D. 1979). *See Kinsman*, 2009 S.D. 53, ¶ 18, 768 N.W.2d at 545 (recognizing *Arneson* was overruled by *Lick v. Dahl*).

(same); *Wilson v. Kelley*, 617 A.2d 433, 436 (Conn. 1992) (same); *Am. Linen Supply of N. M., Inc. v. City of Las Cruces*, 385 P.2d 359, 360 (N.M. 1963) (same); *Jenkins v. Swan*, 675 P.2d 1145, 1148 (Utah 1983) (same); *Hodgdon v. Campbell*, 411 A.2d 667, 669 (Me. 1980) (same).

[¶29.]    As a result, a claim of right necessary for a justiciable request for declaratory relief must arise from an independent source or substantive legal basis. Perhaps for this reason, a party's effort to seek declaratory relief is often connected to a written rule or instrument that directly affects the party's rights, status or other legal relations.

> Any person . . . whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

SDCL 21-24-3; *see also* SDCL 21-24-5 (authorizing declaratory relief relating to the "administration of a trust, or of the estate of a decedent, minor, protected person, or insolvent").

[¶30.]    But, here, the declaration the Appellants seek—that the State is subject to local zoning regulation—is not so much a declaration of their *own rights*, but rather an effort to *compel the State's compliance* with a county ordinance.[9] The Appellants do not challenge HB 1017 or seek a determination of their rights under it; nor do they request an interpretation of the Zoning Ordinance.

---

9.    The Appellants' complaint asked "that the Court shall direct and declare the State . . . must either conform the future development and use thereof to [the Zoning Ordinance] . . . [or] seek to change the zoning district[.]"

[¶31.]     In this regard, this case bears some resemblance to our decision in *Hostler v. Davison County Drainage Commission*, 2022 S.D. 24, 974 N.W.2d 415, where we held that a downstream landowner could not use the Declaratory Judgments Act to challenge a county drainage board's decision issuing a permit to an upstream neighbor to install drainage tile. Our decision noted the incongruity between the downstream landowner's request for declaratory relief and the intended purpose of declaratory judgment actions:

> [The downstream landowner] is not challenging the validity of any ordinance, and he is not seeking a declaration of his rights, status, or other legal relations under such ordinances. Moreover, while he is arguably affected by the drainage commission's decision, he is not seeking to have determined "any question of construction or validity arising under" a municipal ordinance to "obtain a declaration of rights, status, or other legal relations thereunder."

*Id.* ¶ 17, 974 N.W.2d at 421 (quoting SDCL 21-24-3).

[¶32.]     In addition to the lack of an identified constitutional or common law private right of action that would support the Appellants' effort to enforce the Zoning Ordinance, we also note the absence of any reference by the Appellants to a private statutory right of action to support a claim for declaratory or injunctive relief against the State. "A private [statutory] right of action essentially indicates the right of an individual to bring an action to enforce particular regulations or statutes." *Highmark Fed. Credit Union v. Hunter*, 2012 S.D. 37, ¶ 16, 814 N.W.2d 413, 417 (citing *Alexander v. Sandoval*, 532 U.S. 275, 285–86 (2001)).

[¶33.]     The Virginia Supreme Court, again in its *Cherrie* decision, provides this helpful explanation under similar circumstances, where no constitutionally

protected right was implicated nor was any common law right of action asserted:

> The existence of any viable right of action, therefore, must come from statutory law. Sometimes called "statutory standing," this inquiry asks whether the plaintiff is a member of the class given authority by a statute to bring suit. In other words, the question is whether the legislature accorded this injured plaintiff the right to sue the defendant to redress his injury.
>
> *It simply is not enough that the plaintiff has a personal stake in the outcome of the controversy, or that the plaintiff's rights will be affected by the disposition of the case. Rather, the plaintiff must possess the legal right to bring the action, which depends on the provisions of the relevant statute.*

*Cherrie*, 787 S.E.2d at 857–58 (cleaned up) (emphasis added).

[¶34.] Although we have not used the exact term "statutory standing," we have previously explained:

> [C]laims of right sufficient to create standing may arise from statute. The alleged deprivation of a statutorily created right creates an injury to a party even if there would have been no judicially recognizable injury in the absence of that statute. Thus, injury and standing may be shown "solely by the invasion of a legal right" that the legislative branch created.

*In re Petition for Declaratory Ruling re SDCL 62-1-1(6)*, 2016 S.D. 21, ¶ 16, 877 N.W.2d 340, 349 (internal citations omitted) (quoting *Golan v. Veritas Ent., LLC*, 788 F.3d 814 (8th Cir. 2015)).

[¶35.] Additionally, we have applied what can only be described as a statutory standing inquiry in a number of our cases. *See e.g.*, *Cuka v. Sch. Bd. of Bon Homme Sch. Dist. No. 4-2 of Bon Homme Cnty.*, 264 N.W.2d 924, 927 (S.D. 1978) (holding "taxpayers had no standing under SDCL 13-46-1"); *Crowley v. Trezona*, 408 N.W.2d 332, 333 (S.D. 1987) (concluding that the plaintiffs "lack standing" under SDCL 13-21-6); *Sweetman Const. Co. v. State*, 293 N.W.2d 457, 461

(S.D. 1980) (holding that an engineering firm "pursuant to a subcontract expressly approved by the State, ha[d] standing under SDCL 31-2-34 to bring its claim against the State for work performed").

[¶36.]     At oral argument, the Appellants explained their efforts to enforce the Zoning Ordinance in terms of what they believe to be a necessity based on their view that Lincoln County was unable or unwilling, or both, to enforce its own zoning regulations. This necessity justification, however, cannot suffice to establish a claim of right to enforce local zoning ordinances.

[¶37.]     In South Dakota, the responsibility to enforce a county's zoning regulations lies with its board of commissioners. *See* SDCL 11-2-25 ("The board shall provide for the enforcement of the provisions of this chapter and of ordinances, resolutions, and regulations made thereunder, and may impose enforcement duties on any officer, department, agency, or employee of the county."). The provisions of SDCL chapter 11-2 do not authorize enforcement by private individuals, though they do allow indirect enforcement efforts through a mandamus procedure directed to county officials. Under SDCL 11-2-35, "[a]ny taxpayer of the county may institute mandamus proceedings in circuit court to compel specific performance *by the proper official or officials of any duty required by this chapter and by any ordinance adopted thereunder*." (Emphasis added.)[10]

---

10.     At oral argument, the Appellants cited futility as the basis for not petitioning for mandamus relief under SDCL 11-2-35.

## Conclusion

[¶38.]     The Appellants are unable to identify a statute or other legal authority granting them a private right to enforce the Zoning Ordinance, and the declaratory judgment remedy, itself, confers no such substantive rights.  This case is, therefore, not justiciable, leaving no basis upon which a court could exercise jurisdiction.  We affirm the circuit court's decision dismissing the Appellants' complaint on this basis.[11]

[¶39.]     JENSEN, Chief Justice, and KERN, DEVANEY, and MYREN, Justices, concur.

---

11.    The Appellants' alternative request for declaratory relief is equally nonjusticiable because it also contemplates enforcement of the Zoning Ordinance, though under a balancing of interests analysis.